**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Abraham GILBERT,
Defendant–Appellant.**

**No. 89–8711.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1991.

---

Donald F. Samuel, Atlanta, Ga., for defendant-appellant.

Robert L. Barr, Jr., U.S. Atty., Daniel A. Caldwell, Jane Wilcox Swift, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before EDMONDSON and COX, Circuit Judges, and WISDOM *, Senior Circuit Judge.

COX, Circuit Judge:

Abraham Gilbert appeals the district court's award of injunctive relief in favor of the United States. The injunction prohibits Gilbert from using the Richard B. Russell Federal Building as his home and also restricts some of his activities in and around the building. Essentially, we affirm the district court's award of injunctive relief. Because we conclude, however, that the injunction is overbroad in two respects, we reverse in part and remand for modifications of the injunction.

## I. FACTS [1]

Abraham Gilbert is upset. In 1979, the Northern District of Georgia dismissed his suit against a former employer. Since then, Gilbert has been protesting. His form of protest evolved over an eight-year period to the point where he had made the Richard B. Russell Federal Building [2] his home. Gilbert slept just outside the building, kept his bedroll and personal belongings there, ate his meals in the building's cafeteria, used the building's rest rooms to bathe and do his laundry, and dried his clothes on the newspaper racks outside the building. These activities took place twenty-four hours a day, 365 days a year.

Gilbert's message is chameleon-like. At first, he protested the "injustice" dealt him by the federal district court in 1979. Eventually, he protested the handling of Atlanta's "missing and murdered children" case he claimed the government was poisoning him, and trying to frame him for murder, had sabotaged his car, caused his child to be stillborn, and generally, in his words, had "done him wrong."

A description of the Russell Building is important to an understanding of this case.

The ground level of the Russell Building is partially unenclosed. A glass partition, recessed approximately thirty feet from the exterior support columns of the building, separates the internal lobby area from what could be termed the "portico." The concrete columns support the twenty-three stories above the

---

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Presented here is an abbreviated version of the facts. For a more detailed recitation, see the district court's order, *United States v. Gilbert*, 720 F.Supp. 1554 (N.D.Ga.1989).

2. The Russell Building is the home of the United States District Court for the Northern District of Georgia. The building also houses offices of several federal agencies.

ground level of the Building. The portico extends from the glass partition to the support columns and is covered by an "overhang" of the upper floors of the building.

*United States v. Gilbert*, 720 F.Supp. 1554, 1556 (N.D.Ga.1989) (citations omitted). A person inside the ground-floor enclosed lobby area who exits the building on the Spring Street side [3] walks out onto the portico area, which is covered by the overhang. If the person continues to walk toward Spring Street, he would eventually come out from under the overhang, then walk several more feet before reaching twelve steps. The point at which the overhang ends is the demarcation line between the portico and the unenclosed plaza area. The unenclosed plaza consists of a portion of the area at the top of the steps, the steps themselves, and a large area between the steps and Spring Street. *See id.*

## II. PROCEDURAL HISTORY

In January 1988, after Gilbert had lived on federal property for at least six years,[4] the United States filed a civil action against him.[5] The complaint alleged that Gilbert was trespassing on federal property and sought injunctive relief in the form of an order requiring Gilbert to permanently leave the premises. Gilbert, at first *pro se*, and then with the help of appointed counsel, answered by asserting that his activities were expressive and protected by the First Amendment.

Both the United States and Gilbert moved for summary judgment. The district court held an evidentiary hearing on March 22, 1989. After reviewing the testimony presented at the hearing as well as the affidavits submitted, the court granted summary judgment in favor of the government. *Id.* at 1555. In so doing, the court concluded that Gilbert was indeed trespassing on federal property and that the First Amendment did not protect all of his activities at the Russell Building. *See id.* at 1559–65.

On August 22, 1989, the district court issued the following injunction:

FIRST, defendant Gilbert is ENJOINED from residing anywhere inside the [Russell Building] or on the grounds of the Russell Building, including but not limited to, the portico area.... Specifically, defendant Gilbert may not:

(a) Sleep in the portico area, inside the Russell Building, or anywhere else on the grounds of the Russell Building;

(b) Place a sleeping kit or other personal effects in the portico area, inside the Russell Building, or anywhere else on the grounds of the Russell Building, except as provided below in the paragraph designated "Third";

(c) Use the restroom facilities of the Russell Building for bathing, or for washing or laundering his clothes or other personal belongings, or for filling containers in which to wash himself, his clothes, or his other personal belongings; or

(d) Hang his clothes or other personal belongings in the portico area, inside the Russell Building, or anywhere else on the grounds of the Russell Building.

SECOND, defendant Gilbert is ENJOINED from public protesting, demonstrating, leafletting, displaying a sign, picketing, marching, speaking or chanting to the public, and engaging in similar expressive activity either inside the Russell Building or in the portico area under the overhang of the Russell Building.

THIRD, nothing in this injunction shall be construed to prohibit defendant Gilbert from protesting, demonstrating, leafletting, displaying a sign, picketing, marching, speaking, chanting, or engag-

---

**3.** The front of the Russell Building faces Spring Street.

**4.** The General Services Administration (GSA), which manages the Russell Building, asserts that it had been attempting to remove Gilbert for some time prior to filing suit. Apparently, the only written demand came in the form of a letter dated November 19, 1987, which demanded Gilbert remove his belongings and depart the premises within 48 hours. Gilbert obviously did not comply with the request.

**5.** Service of process, of course, was effected at Gilbert's residence, the Russell Building.

ing in similar expressive activity in the unenclosed, uncovered plaza area of the Russell Building.... Moreover, defendant Gilbert is not prohibited from having with him personal property used in connection with the First Amendment activity described in this paragraph.

District Court Order, Aug. 22, 1989, R.1–46–2–4. Stated otherwise, the injunction prevents Gilbert from living at the Russell Building and from carrying on most expressive activity inside the building or in the portico area. Gilbert generally may carry on First Amendment activity in the unenclosed plaza. He may not, however, sleep in that area or anywhere else on the Russell Building grounds.

## III. CONTENTIONS OF THE PARTIES AND ISSUES ON APPEAL

Gilbert contends that this case is not appropriate for summary judgment because there are disputed questions of fact that the district court improperly resolved. Specifically, Gilbert asserts that whether the public understands his message, whether his presence is aesthetically displeasing, whether he has violated GSA regulations against loitering, and whether the portico area has regularly been used for demonstrations are all disputed questions that should be resolved at trial and not on summary judgment. Gilbert further argues that the injunction violates his First Amendment rights because it is overbroad, because it is a prior restraint and because the injunction does not constitute a reasonable time, place, or manner restriction. Finally, Gilbert argues that the injunction violates the equal protection component of the Fifth Amendment [6] because it treats him differently than it does other potential protesters.

The United States argues that although there may be some minor disputed factual questions, none of them are both genuine and material and therefore summary judgment is appropriate. The government fur-

ther asserts that much of Gilbert's conduct is not expressive and not protected by the First Amendment. Even if all of Gilbert's conduct is expressive, the government argues, the injunction is not overbroad, is not a prior restraint, and constitutes a reasonable time, place, and manner restriction on Gilbert's activities.

In this appeal we must decide first whether this case is appropriate for summary judgment, and second whether the injunction entered by the district court is consistent with the First Amendment.

## IV. DISCUSSION

### A. Summary Judgment

This court reviews the district court's grant of summary judgment de novo. DeLong Equip. Co. v. Washington Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990). Summary judgment is appropriate only if the pleadings and evidence in the record demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On summary judgment, the reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Id. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Rather, the nonmoving party must show that there are "genuine factual issues that prop-

---

**6.** U.S. Const. amend V. Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has held that its Due Process Clause "contains an equal protection component prohibiting the United States

from invidiously discriminating between individuals or groups." Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

erly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Further, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725 (1983).

Gilbert argues first that "the nature of [his] protest," that is, whether his protest is expressive conduct, is a disputed issue of material fact. Appellant's Brief at 6. He concedes, however, that some of his activity (e.g. using the rest rooms to bathe and do his laundry, using the newspaper racks to dry his clothes) is not expressive and therefore not within the First Amendment's special protections. Gilbert claims the balance of his activity *is* expressive. Since we assume that this conduct is expressive, the question whether Gilbert's conduct is expressive is not a *genuine* issue of material fact necessary to our decision.

■ Next Gilbert contends that whether his presence at the Russell Building is aesthetically pleasing is a disputed fact. As one might guess Gilbert argues his presence is aesthetically pleasing and the government argues that he detracts from the building's appearance. But Gilbert's argument misses the point. We need not decide this question in order to resolve this case. We must only decide whether the government has a legitimate interest in maintaining the building's appearance. If it does, then the government is entitled to decide how best to advance that interest. Therefore, this is not a genuine issue of material fact that prevents summary judgment in this case.

■ Gilbert's third asserted disputed issue of material fact is whether he has violated a GSA regulation against loitering. Again, this is not a genuine issue of material fact. The district court held that "Gilbert's continued use of the property as a residence, after receiving notice to leave, is unlawful and constitutes a trespass under Georgia law." *Gilbert,* 720 F.Supp. at 1560. Apparently, Gilbert concedes this is-

sue because he does not argue it on appeal. Issues not designated in the appellant's brief normally are deemed abandoned. *Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983). Therefore, Gilbert admits much of his activity is illegal under Georgia law, but asserts it is nevertheless protected by the First Amendment. A determination of whether Gilbert's conduct also violates the GSA loitering regulation is unnecessary to our decision.

■ Finally, Gilbert claims that whether "the portico area has been regularly used as a forum for demonstrations, protests and other First Amendment activity" is a disputed issue of material fact. Although this question is closer, we conclude that this does not constitute a genuine issue of material fact. The reasons for this determination will be discussed as part of our consideration of the public forum issue.

We conclude that this case presents no genuine issue of material fact. We now turn to the question of the effect of the First Amendment on this case.

### B. *The First Amendment*

Gilbert concedes the illegality of his conduct under Georgia law. State law, however, may not override the First Amendment. *See* U.S. Const., art. VI, cl. 2 (Supremacy Clause). It is axiomatic that any statute or court order that restricts Gilbert's activity must be consistent with the First Amendment.

■ Gilbert bears the burden of showing that his conduct is expressive and that the First Amendment applies to it. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221 (1984). He concedes that some of his activity, such as using the building's rest rooms to bathe and launder his clothing and using the newspaper racks to dry his clothes is not expressive. Therefore, we will affirm the district court's order insofar as it deals with those concededly unprotected activities.

The balance of his activity, Gilbert argues, is expressive—including sleeping on the portico. Although we have doubts re-

garding whether some of this activity is entitled to First Amendment protections, for the purposes of this opinion we will assume that Gilbert is engaged in expressive conduct.

### 1. The Public Forum Doctrine

The government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), *reh'g denied*, 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1967). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right of free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Defense and Educ. Fund Inc.*, 473 U.S. 788, 799–800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985). Even when acting in its proprietary capacity, however, the government does not enjoy absolute freedom from First Amendment constraints. *United States v. Kokinda*, — U.S. —, —, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990).

The "extent to which the government can control access depends on the nature of the relevant forum." *Kokinda*, — U.S. at —, 110 S.Ct. at 3119; *Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448. In *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court set out a framework for determining how First Amendment interests are to be analyzed with respect to government property. Regulation of speech on government property that has been traditionally open to the public for expressive activity, such as public streets and parks, is subject to strict scrutiny. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. Regulation of speech on government property that is not a traditional public forum but that the government has specifically dedicated as a place for expressive activity is also examined under strict scrutiny. *Ko-*

*kinda*, — U.S. at —, 110 S.Ct. at 3119; *Perry*, 460 U.S. at 45–46, 103 S.Ct. at 955. Regulation of speech on government property not by tradition or designation a forum for public communication is examined only for reasonableness. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

There is no question that the unenclosed plaza falls into the second category. Although the area is not a traditional public forum, it has been opened by the government as a place for public expression. Demonstrations occur there on a frequent basis. *See Gilbert*, 720 F.Supp. at 1556. Therefore, we must apply strict scrutiny in reviewing the injunction issued by the district court as it relates to Gilbert's activity in the unenclosed plaza. Similarly, there is no question that the interior of the building falls into the third category. The interior of the Russell Building is a nonpublic forum. Therefore, the restrictions placed upon Gilbert's conduct inside the building must only be reasonable.

There is some dispute regarding the portico. Gilbert claims the portico has been used by others for demonstrations and has therefore been opened by the government for public communication. Thus, Gilbert contends that the appropriate standard to be used in examining the injunction as it relates to his activity on the portico is strict scrutiny. The government asserts, and the district court found that the GSA has an unwritten policy of excluding demonstrators from the portico area. *Gilbert*, 720 F.Supp. at 1556. The district court acknowledged that "demonstrators had occasionally used the portico during protest activity," *id.*, but concluded that these were "isolated instances." *Id.* at 1564. Gilbert contends it is not within the power of the district court to resolve this factual dispute on summary judgment.

"The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). Selective access does not trans-

form government property into a public forum. *Perry*, 460 U.S. at 47, 103 S.Ct. at 956. "We will not find that a public forum has been created in the face of clear evidence of a contrary intent...." *Cornelius*, 473 U.S. at 803, 105 S.Ct. at 3449. Indeed, if the law were otherwise, the government would be required to stand guard over its property ready to chase away anyone who sought to use the property for expressive conduct, for fear of creating a public forum by acquiescence.

The evidence in the record demonstrates at most that the government has acquiesced in some public demonstrations in the portico area. Gilbert presents absolutely no evidence that the government intentionally permits others, either by written or unwritten policy, to use the portico for demonstrations. Our review of the record leads us to agree with the district court that there is no genuine issue of material fact and that the most Gilbert has shown are "isolated instances of undiscovered violations" of GSA policy. *See Clark*, 468 U.S. at 295 n. 6, 104 S.Ct. at 3070 n. 6. Therefore, the portico area is not a public forum and the injunction as it relates to Gilbert's activity on the portico must be judged by a standard of reasonableness.

### 2. Examination of the Injunction
#### a. *The Unenclosed Plaza*

■■■ We next proceed to an examination of the injunction as it relates to Gilbert's activity in the unenclosed plaza, utilizing a standard of strict scrutiny. Expression, even in a public forum, is subject to reasonable time, place and manner restrictions. *Clark*, 468 U.S. at 293, 104 S.Ct. at 3069. Restrictions on speech in a public forum are valid "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of information." *Id.; see also*

cases cited in *id.* at 293–94, 104 S.Ct. at 3065.

The injunction permits Gilbert to do almost anything in the unenclosed plaza. He may not, however, live there or sleep there. "In a public forum, by definition, all parties have a constitutional right of access and the [government] must demonstrate compelling reasons for restricting access to a single class of speakers, a single viewpoint, or a single subject." *Perry*, 460 U.S. at 55, 103 S.Ct. at 960.

The record demonstrates that others, as part of a protest, have been permitted to sleep in the unenclosed plaza area. The government offers no compelling reason why others may do so but Gilbert may not. The injunction is overbroad in this respect. Therefore, the injunction must be modified so that it does not prohibit Gilbert from sleeping in the unenclosed plaza, *if he does so as part of a protest*. The line between Gilbert *living* on the grounds of the Russell Building for reasons unrelated to expressive activity, and his sleeping there because he is protesting may be difficult to draw. Exactly where that line should be drawn will have to be decided when and if the question arises. We acknowledge the government's argument that sleeping can never be expressive conduct.[7] We refuse to decide this question, however, because the government's policy is to permit others to sleep in the unenclosed plaza area in conjunction with demonstrations. An injunction that prohibits Gilbert from engaging in arguably expressive conduct that others are free to engage in clearly cannot withstand strict scrutiny analysis.

The balance of the injunction with regard to the unenclosed plaza is consistent with the First Amendment and need not be modified because it only prevents Gilbert from using the Russell Building as his residence. As we have already indicated, such activity is not expressive and is therefore not protected First Amendment activity.

---

7. The Supreme Court has never decided this question, but apparently at least one justice would agree with the government's position. *See Community for Creative Non–Violence v. Watt*, 703 F.2d 586, 622 (D.C.Cir.1983) (Scalia, J., dissenting), *rev'd, Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) ("I write separately ... flatly to deny that sleeping is or ever can be speech for First Amendment purposes.")

### b. The Portico and the Interior of the Building

■ We will now examine the injunction with regard to Gilbert's activities on the portico and inside the Russell Building—nonpublic fora. To satisfy First Amendment concerns, the injunction must be viewpoint neutral and reasonable in light of the purpose the property is intended to serve. *Cornelius*, 473 U.S. at 806, 105 S.Ct. at 3451; *United States v. Belsky*, 799 F.2d 1485, 1489 (11th Cir.1986). The injunction need not be "the most reasonable or the only reasonable limitation," nor must it be narrowly tailored to serve a compelling governmental interest. *Cornelius*, 473 U.S. at 809, 105 S.Ct. at 3452; *Belsky*, 799 F.2d at 1489.

■ The injunction, although it is aimed at a single person, is based on a GSA policy applicable to everyone. That policy is clearly viewpoint neutral. It applies to all demonstrators without regard to the content of their messages. Additionally, the policy is reasonable. The district court found, and we agree, that the government has a legitimate interest in maintaining the aesthetics of the Russell Building [8] and in keeping the walkways near the building unobstructed. *Gilbert*, 720 F.Supp. at 1560, 1562.[9] At oral argument the government also asserted an interest in the safety of those who work in the Russell Building. It is reasonable to conclude that a bedroll kept near the entrance to the building could present a potential security problem. A policy aimed at keeping the portico area and the interior of the building free of demonstrators is eminently reasonable and rings of the "common-sense" that is sufficient to uphold a policy under reasonableness review. *See Kokinda*, —— U.S. at ——, 110 S.Ct. at 3124; *Heffron v. International Soc'y for Krishna Conscious-*

*ness, Inc.*, 452 U.S. 640, 665, 101 S.Ct. 2559, 2573, 69 L.Ed.2d 298 (1981) (Blackmun, J., concurring in part and dissenting in part).

Another factor bearing on reasonableness is the availability of alternative channels of communication. *Cornelius*, 473 U.S. at 807, 105 S.Ct. at 3452; *Perry*, 460 U.S. at 53, 103 S.Ct. at 959. The GSA policy allows protesters to express their viewpoints fully in the unenclosed plaza area, which is located just a few feet from the entrance to the building and the portico area. The impact of a demonstrator's message will not suffer if it must be conveyed in the unenclosed plaza area instead of inside the building or on the portico.

Because the injunction almost mirrors the GSA policy, we will affirm most of it as it relates to the interior of the building and the portico. A modification, however, is required. The injunction could be interpreted to prohibit Gilbert from engaging in any expressive conduct at all inside the building or on the portico, including such activity as wearing a political button, or talking with someone about the day's news events. The GSA policy does not, and we believe could not, prohibit such activity. The injunction may not prohibit Gilbert from wearing expressive paraphernalia and speaking about anything he wishes inside the building and on the portico *when he is lawfully in those areas.* Gilbert may not, as others may not, carry on a continuing protest in either of these areas. As Justice Black pointed out, "The First and Fourteenth Amendments ... take away from the government, state and federal, all power to restrict freedom of speech, press, and assembly *where people have a right to be for such purposes." Cox v. Louisiana,* 379 U.S. 536, 578, 85 S.Ct. 453, 468, 13

---

**8.** It is well-settled that the government may legitimately exercise its police powers to advance aesthetic values. *See Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984) and cases cited therein; *see also Harnish v. Manatee County,* 783 F.2d 1535, 1539 (11th Cir.1986) ("Aesthetics is a substantial governmental goal which is entitled to and should be accorded weighty respect").

**9.** We acknowledge Gilbert's argument that his presence on the portico does not hinder egress or ingress to the building. Obviously, though, if Gilbert is permitted to remain on the portico, the government cannot prevent others from doing the same. It would not take many demonstrators to cause a problem with egress and ingress to the building. Therefore, the government clearly has an interest in keeping anyone from being permanently situated on the portico.

L.Ed.2d 471 (1965) (separate opinion of Justice Black) (emphasis in original).

### V.  CONCLUSION

The district court's order and injunction is AFFIRMED in part and REVERSED in part and the case is REMANDED for a modification of the injunction consistent with this opinion.[10]

AFFIRMED in part and REVERSED and REMANDED in part.

---

**10.**  To reiterate, the following modifications are required:  (1) the injunction may not prohibit Gilbert from sleeping in the unenclosed plaza, *if he does so as part of a protest;*  (2) the injunction may not prohibit Gilbert from wearing expressive paraphernalia and speaking about anything he wishes inside the building and on the portico *when he is lawfully in those areas.*