**UNITED STATES of America**

v.

**Abraham GILBERT.**

**No. 1:96–CR–257A–JEC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 8, 1996.

Beverly Sumner Mitchell, Office of United States Attorney, N.D. Georgia, Atlanta, GA, for Plaintiff.

Suzanne Hashimi, Federal Defender Program, Atlanta, GA, Pro Se.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARNES, District Judge.

In addition to the oral findings and conclusions made by the Court at the bench trial of this case, the Court adds the following statements and makes these additional comments to clarify the potentially confusing discussion that occurred between the Court, counsel for the Government and "stand-by counsel" [1] for defendant (hereinafter "defense counsel") after the evidence had closed.[2] Stated succinctly, defense counsel argued that the Government had not proved its case because it had shown only that defendant was attempting to demonstrate inside the "planter" area, but outside the portico area of the Richard Russell Building, which counsel contends was permissible under an earlier opinion by the Eleventh Circuit concerning Mr. Gilbert's activities at the Russell Building. The Court continues to disagree with that argument and states the following by way of explanation.

By way of background, defendant has, on an intermittent basis, been a regular visitor of the Russell Building for many years, engaging in "protest" [3] activities. In 1989, after defendant had effectively lived at the building for six years, the Government obtained an injunction from the district court

---

1. Defendant refused to have an attorney appointed to represent him. "Stand-by counsel" was appointed to assist defendant if he felt any need for such assistance.

2. Given the disagreement between counsel as to the placement of planters in front of the building, the Court directed the parties to submit a drawing of the configuration of the front part of the Russell Building and held the record open for that purpose. The Government submitted its drawing and the Court allowed defense counsel until October 28 to submit hers; ultimately, defense counsel agreed with the accuracy of the Government's drawing. Upon review, the Court noted that the drawing did not expressly designate the planters and orally directed counsel to so label the drawing. The Court received this labelled drawing, which is attached as an appendix to this Order, on November 7, 1996, and accordingly now issues these supplemental findings and conclusions.

3. In describing defendant's activities, the term "protest or "demonstrating" is often used and will be used in this Order. In fact, however, defendant's activities bear little resemblance to traditional political protests. Sadly, it is quite obvious that defendant suffers from mental illness and many of his statements border on the delusional. At first, defendant claimed that the Government was poisoning him, trying to frame him for murder, had sabotaged his car, and caused his child to be stillborn. *United States v. Gilbert*, 920 F.2d 878, 880. Now, he has expanded the list of complaints about which he purportedly protests to include rambling allegations that the Eleventh Circuit Court of Appeals either caused the murder or is covering up the murder of Judge Robert Vance. (Transcript at 15, 31, 51). While the mentally ill enjoy First Amendment protections, just as do the mentally healthy, use of the terms "protest" or "demonstration," in their conventional sense, is misleading when applied to the activities of defendant.

forbidding defendant from engaging in many of the activities that he had pursued for those many years.[4] *United States v. Gilbert,* 720 F.Supp. 1554 (N.D.Ga.1989). The Eleventh Circuit somewhat modified the injunction, but upheld several provisions. *U.S. v. Gilbert,* 920 F.2d 878 (11th Cir.1991).

In particular, the Government had sought to enjoin defendant from protesting or demonstrating inside the Russell Building or in the portico area under the "overhang" section of the building. The Eleventh Circuit upheld that provision of the injunction, but modified it to provide that while defendant could not carry on a "continuing protest" in either of these areas, he could not be prohibited from such expressive conduct as "wearing a political button, or talking with someone about the day's news events." 920 F.2d at 886. With regard to the "unenclosed plaza area," which is the area that begins outside the portico and extends all the way to Spring Street, the only issue before the Eleventh Circuit was whether defendant could sleep there. Although the panel expressed uncertainty whether sleeping is ever an expressive activity, it invalidated that part of the injunction prohibiting defendant from sleeping in the plaza area because the evidence indicated that the GSA had allowed others, as a part of protest activities, to sleep in that open area. 920 F.2d at 885.

In the present case, defendant was cited for failing to comply with the lawful direction of a federal protection officer [FPO] on five different occasions in May, 1996: on May 8, May 10, May 23, May 29, and May 30. The information charged that on each of these occasions, defendant continued to demonstrate without a permit and refused to leave after receiving instructions from the FPO to comply with GSA policies and regulations. Specifically, on May 8, 1996 the FPO observed defendant in front of the Russell Building, at the top of the stairs to the

building, near, but not under, the overhang area that circumscribes the "portico." The officer informed defendant that he would have to obtain a permit before continuing his demonstration and also that he would have to demonstrate beyond the planters.[5] Defendant refused to leave and the officer issued a citation. (Tr. at 17–21).

The same scenario was repeated on the next three occasions in May for which defendant received a citation. (Tr. at 22–25). Finally, on the fifth occasion—May 30, 1996—the officer again confronted defendant and inquired whether he had obtained a permit; defendant responded that he had not and did not have to get a permit and he refused to leave. Thereafter, the officer arrested him. (Tr. at 24–25).

■ Clearly, defendant was demonstrating without a permit, in violation of GSA policy at the Russell Building. As the GSA had the right, even in a public forum, to issue reasonable time, place and manner restrictions,[6] as defendant has not argued coherently that there is anything unreasonable about a permit requirement, as the Court, itself, concludes on the record before it that there is nothing unreasonable about such a requirement, and as defendant refused on five occasions to obtain a permit and to leave when directed by an officer, defendant's guilt of the charged offense is clear.

Defendant, however, appears to argue—and the Court has to stretch his argument a bit to try to discern its thrust—that even if he had gotten a permit, the GSA would not have allowed him to protest inside the planter area and that such a restriction would have violated his First Amendment rights. The Court does not consider it a valid defense to defendant's undisputed failure to obtain a permit to argue that the permit, itself, would have been restrictive. It is likely that if defendant had obtained a permit, he would have still been ticketed had he protest-

---

4. For example, defendant bathed and washed his clothes in the restrooms of the building and hung his clothes and other personal belongings on the grounds of the building. *See U.S. v. Gilbert,* 920 F.2d 878, 880 (11th Cir.1991).

5. According to the joint drawing, and moving from the building toward the street, the steps

begin just outside the portico and the planters establish a boundary several feet beyond the steps; beyond the planters, there is an open area that extends to the street and on which protest activities are permitted.

6. *Gilbert,* 920 F.2d at 885.

ed inside the perimeter of planters, but defendant can only speculate on that point. Even if such an argument did constitute a defense to defendant's failure to obtain a permit, the Court finds the argument to be without merit.

Again, extrapolating what it believes defendant's argument to be, defendant seems to be saying that because the injunction issued in 1989 did not limit his protest activities to an area outside the planters, defendant's protest activities cannot ever be so limited, absent a new opinion from the Eleventh Circuit so restricting the defendant. It is true that the Eleventh Circuit did not indicate that an injunction restricting defendant's protest activities to an area outside the planters would be valid, and for a good reason: there were no planters in place at the time of the issuance of the injunction. Instead, in 1992, in response to heightened security concerns, the GSA placed large planters on the plaza area just beyond the steps leading to the entrance of the building and restricted protest activities to the open area beyond the planters. (Tr. at 40, 6, 7)

Accordingly, the Eleventh Circuit has never addressed the question of whether someone could insist on demonstrating inside the planter area. In the earlier *Gilbert* case, the Government never disputed the right of the citizenry to demonstrate in a forum that has been opened by the Government as a place for public expression and, because, at the time of the injunction, the entire unenclosed plaza level fell into that category, there was likewise no dispute that the entire area was the appropriate forum for First Amendment activity. Times and security concerns change, however, and thereafter the GSA erected large planters in part of the unenclosed plaza area just outside the stair area leading to the building and restricted protests to that part of the unenclosed plaza area and portico outside the planters' boundary.

As noted by the Eleventh Circuit, the plaza area of the Russell Building is not a traditional public forum, as are parks and streets. Instead, it has been treated as a public forum for First Amendment analysis only because the Government has specifically dedicated it as a place for public expression as evidenced by the fact that demonstrations have occurred there on a regular basis. 920 F.2d at 884. As the unenclosed plaza area's status as a dedicated forum arises only by Governmental acquiescence to its use for First Amendment activity, it stands to reason that the GSA could, for security reasons, likewise carve out a part of that area and restrict its use for First Amendment activity. Indeed, there has been no evidence that the Government has allowed anyone to protest inside the planter area in the four years since the new policy took effect. Likewise, there has been no argument by defendant that there is not ample area in which to demonstrate in the large, unenclosed plaza area outside the planters.

Instead, what defendant appears to be arguing is that the injunction obtained against him in 1989 is a weapon that he may use to restrict the Government in its treatment of him. The Court does not see the injunction as carrying that kind of authority. After years of recalcitrant and inappropriate conduct by defendant, in which the issuance of numerous petty offense citations apparently had little deterrent effect on defendant, the Government obtained the injunction, as *its* weapon, presumably in an effort to have a court order that would forbid the defendant from pursuing his unlawful activities. Thus, if the Government were attempting to seek civil or criminal sanctions against defendant for his violation of the injunction, obviously the Government would be limited to the letter of that injunction in arguing that defendant was in violation. The Government has not cited defendant for a violation of the injunction, however.

■ Moreover, this Court does not see the injunction as forever guaranteeing defendant, and defendant only, immunity from the reasonable restrictions on First Amendment activity that the Government might place on all persons seeking to use the property. Were defendant's argument successful, then any time that the Government added a new wrinkle to its permit process or in any way altered the time, place, or manner restrictions in effect in 1989, it would have to go to court and gain Eleventh Circuit approval be-

fore applying such restrictions against the defendant. Such a result would gain defendant superior treatment and rights over all other persons using the facility only because the defendant's prior misconduct had been so great, in the first place, as to necessitate the obtaining of an injunction against his activities by the Government: clearly an odd result. Indeed, in May of 1996, there was nothing preventing the defendant from going to Court to obtain declaratory relief concerning the "planter" issue. Disobedience on five occasions of the officer's order was not the only or even the best way to test the Government's authority to restrict First Amendment activity to an area outside the planters.

Accordingly, the court supplements its oral findings and conclusions with this Order.

MITCHELL STREET

MLK jr DRIVE

PORTICO/OVERHANG

PLAZA

SPRING STREET