United States Court of Appeals,

Eleventh Circuit.

No. 97-5304.

ISKCON MIAMI, INC., a Florida nonprofit religious corporation, Verne Meis, an individual, Plaintiffs-Appellants,

v.

METROPOLITAN DADE COUNTY, FLORIDA, Gary Dellapa, Aviation Director of Miami International Airport, Defendants-Appellees.

July 27, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-28-Civ-WMH), William M. Hoeveler, Judge.

Before EDMONDSON and BARKETT, Circuit Judges, and ALARCÓN*, Senior Circuit Judge.

BARKETT, Circuit Judge:

Appellants ISKCON Miami, Inc. and Verne Meis (collectively, "ISKCON")[1] appeal from an adverse summary judgment order rejecting ISKCON's First Amendment challenge to Dade County regulations prohibiting solicitation of funds and the sale of literature at Miami International Airport ("MIA") and restricting the areas where people may distribute free literature at the airport. In addition to arguing that the bans on solicitation and sale of literature are unconstitutional restrictions on speech, ISKCON argues that the areas within MIA where ISKCON may distribute free literature are inadequate and that County regulations impermissibly grant the Director of MIA unfettered discretion to select the areas for such First Amendment activity.

---

*Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]"ISKCON" is an acronym for the International Society for Krishna Consciousness. Verne Meis is a member of ISKCON.

BACKGROUND

In June 1995, Dade County amended its regulations regarding First Amendment activity at MIA. Section 25-2.2(a) of the Code, the principal regulation challenged here, provides:

> No person shall solicit alms or contributions of money or other articles of value, for religious, charitable, or other purpose, and receive money or other articles of value, whether in the form of cash, checks, credit or debit vouchers or any other form of negotiable instruments in the public areas of the Terminal.

Metropolitan Dade County, Fla., Code, ch. 25, § 25-2.2(a) (1995).  ISKCON also challenges § 25-2.2(c) of the Code, which gives the Director of MIA

> the authority to prescribe from time to time restrictions applicable to First Amendment activities at the Airport.  Such restrictions ... may include, but not be limited to, identifying specific locations of First Amendment zones in the Terminal Building and other Airport facilities, limiting the number of persons permitted in such zones, and providing a method for resolving conflicting requests for such zones.

Under § 25-2.2(d), these restrictions "shall be reasonable and appropriate, and made only after a finding by the Director that the restrictions are necessary to avoid injury, to persons or property, or to assure the safe and orderly use of the Airport facilities by the public."

Members of ISKCON espouse the theological and missionary views of the Krishna consciousness religion.  In accordance with the importance of scripture to the Krishna religion, Krishna adherents are required to venture into public places to distribute religious literature and solicit support for the religion, a practice known as sankirtan.  ISKCON has been practicing sankirtan at MIA since 1974.  Shortly after the new regulations were passed, ISKCON filed this action.  ISKCON argues that the regulations unconstitutionally prohibit solicitation of funds for the Krishna religion and the sale of religious literature throughout MIA, including the sidewalks and parking lots outside the terminal buildings.  ISKCON also argues that the Director has unreasonably restricted ISKCON's ability to engage in the free distribution of literature and other First

2

Amendment activities at MIA by limiting the places where ISKCON may conduct such activities to eight areas interspersed along the second level of MIA—where the ticketing, security, arrival and departure gates, and waiting areas are located. The district court decided this case on cross-motions for summary judgment, upholding the regulations against ISKCON's First Amendment challenge. We affirm.

## DISCUSSION

In determining whether the regulations at MIA withstand constitutional scrutiny, we are guided by the Supreme Court's decisions in *International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992), and *Lee v. International Society for Krishna Consciousness, Inc.,* 505 U.S. 830, 112 S.Ct. 2709, 120 L.Ed.2d 669 (1992) (per curiam) (collectively, "*Lee* ").[2]  In *Lee,* the Supreme Court considered a challenge brought by ISKCON to restrictions on the sale and distribution of literature and solicitation of contributions in New York's airports.

In an opinion authored by Chief Justice Rehnquist, a majority of the Court found the solicitation ban constitutional. Because the plaintiffs in *Lee* sought access to government property to engage in protected speech, the Court analyzed the constitutionality of the regulation under the public forum doctrine. Under this doctrine, regulations on speech in traditionally public fora such as municipal sidewalks and parks are subject to strict scrutiny, as are regulations in fora designated by the government to be used for expressive activities. *Id.* at 678, 112 S.Ct. 2701; *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985);

---

[2]The several opinions which comprise the Court's decisions in the two *Lee* cases are reported separately in the official Supreme Court reporters.  For the sake of convenience, we refer to all of these opinions collectively as "*Lee.*"

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). All other government property is nonpublic, and the government may restrict speech in nonpublic fora as long as the restrictions are reasonable and viewpoint-neutral. *Lee,* 505 U.S. at 679, 112 S.Ct. 2701. The Court in *Lee* concluded that the airport terminals at issue were nonpublic fora, reasoning that airport terminals could not qualify as public fora, because, "given the lateness with which the modern air terminal has made its appearance, it hardly qualifies for the description of having "immemorially ... time out of mind' been held in the public trust and used for purposes of expressive activity." *Lee,* 505 U.S. at 680, 112 S.Ct. 2701 (quoting *Hague v. Committee for Indus. Org.,* 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). "[I]t cannot fairly be said that an airport terminal has as a principal purpose promoting "the free exchange of ideas.' To the contrary, ... Port Authority management considers the purpose of the terminals to be the facilitation of passenger air travel, not the promotion of expression." *Id.* at 682, 112 S.Ct. 2701 (quoting *Cornelius,* 473 U.S. at 800, 105 S.Ct. 3439).

Although restrictions on speech in nonpublic fora are not subject to strict scrutiny, "[t]he Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints." *United States v. Kokinda,* 497 U.S. 720, 725, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality opinion). Restrictions must still be reasonable and "not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Lee,* 505 U.S. at 679, 112 S.Ct. 2701. At the same time, "[t]he restriction "need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation.' " *Id.* at 683, 112 S.Ct. 2701 (quoting *Kokinda,* 497 U.S. at 730, 110 S.Ct. 3115 (plurality opinion)).

Having determined that the airports are nonpublic fora, the majority then upheld the ban on solicitation. Noting the "disruptive effect that solicitation may have on business," *id.,* the Court found the ban to be reasonable. "Passengers who wish to avoid the solicitor may have to alter their paths, slowing both themselves and those around them. The result is that the normal flow of traffic is impeded." *Id.* at 683-84, 112 S.Ct. 2701. The Court also found that:

> face-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation.... The unsavory solicitor can also commit fraud through concealment of his affiliation or through deliberate efforts to shortchange those who agree to purchase.... [T]he targets of such activities frequently are on tight schedules .... mak[ing] such visitors unlikely to stop and formally complain to airport authorities.

*Id.* at 684, 112 S.Ct. 2701. Because of the risks and disruptions created by solicitation, the Court in *Lee* concluded that although solicitation is a form of speech protected by the First Amendment, the Port Authority's prohibition on solicitation inside the airport terminals was reasonable.

In contrast, a separate majority of the Court in *Lee* found the ban on distribution of literature at the airports unconstitutional. Five Justices concurred in the Court's judgment with respect to the distribution ban, albeit for different reasons. Justices Kennedy, Souter, Blackmun and Stevens treated the airport terminals as public fora, and found the distribution ban invalid under the strict scrutiny test. Writing separately, Justice O'Connor agreed with the majority in the first *Lee* decision that airports are not public fora, but she concluded that the ban on distribution was an unreasonable restriction on speech.

5

While the regulations in question in *Lee* were phrased to prohibit both the sale and the distribution of literature,[3] no majority of the court directly addressed the ban on the sale of literature. The per curiam opinion in *Lee* stated only that it was affirming "the judgment of the Court of Appeals holding that the ban on distribution of literature in the Port Authority airport terminals is invalid under the First Amendment." *Lee,* 505 U.S. at 831, 112 S.Ct. 2709.[4] Although in his separate concurrence Justice Kennedy specifically distinguished the ban on solicitation (which he found permissible) from the ban on the sale of literature (which he declared impermissible), *id.* at 708-09, 112 S.Ct. 2701 (Kennedy, J., concurring), no other Justice joined this portion of Justice Kennedy's opinion. Justice O'Connor, the only Justice who found the distribution ban unconstitutional under the majority's nonpublic forum analysis, discussed only distribution, emphasizing that the problems of disruption associated with solicitation were not present in the case

---

[3]The regulations stated:

> 1. The following conduct is prohibited within the interior areas of buildings or structures at an air terminal if conducted by a person to or with passers-by in a continuous or repetitive manner:
>
> (a) The sale or distribution of any merchandise, including but not limited to jewelry, food stuffs, candles, flowers, badges and clothing.
>
> (b) The sale or distribution of flyers, brochures, pamphlets, books or any other printed or written material.
>
> (c) The solicitation and receipt of funds.

*Lee,* 505 U.S. at 675-76, 112 S.Ct. 2701 (citation omitted).

[4]Similarly, in its opinion in *Lee,* the Court of Appeals for the Second Circuit mentioned only the ban on distribution, not sales. *International Soc'y for Krishna Consciousness v. Lee,* 925 F.2d 576, 582 (2d Cir.1991) ("We therefore hold that the Port Authority must provide reasonable access to the terminals for the distribution of literature.").

6

of distribution. *See id.* at 689-90, 112 S.Ct. 2701 (O'Connor, J., concurring). Thus, the precise

holding of *Lee* as to the ban on the sale of literature is unclear.

Notwithstanding the ambiguous nature of this aspect of the Court's holding, we conclude,

based on the various opinions and statements in *Lee* and in other Supreme Court decisions, that the

same problems that justify a governmental restriction on solicitation in a nonpublic forum may

render a similar prohibition on the sale of literature reasonable. In upholding restrictions on

solicitation, the Court has focused on the inconvenience, disruption, and intrusion associated with

the act of engaging in the immediate exchange of money with passersby, in contrast to merely

handing them literature:

> Solicitation requires action by those who would respond: The individual solicited must
> decide whether or not to contribute (which itself might involve reading the solicitor's
> literature or hearing his pitch), and then, having decided to do so, reach for a wallet, search
> it for money, write a check, or produce a credit card.... As residents of metropolitan areas
> know from daily experience, confrontation by a person asking for money disrupts passage
> and is more intrusive and intimidating than an encounter with a person giving out
> information. One need not ponder the contents of a leaflet or pamphlet in order
> mechanically to take it out of someone's hand, but one must listen, comprehend, decide, and
> act in order to respond to a solicitation.

*Kokinda,* 497 U.S. at 734, 110 S.Ct. 3115 (plurality opinion); *Lee,* 505 U.S. at 683, 112 S.Ct. 2701

(quoting *Kokinda*). The sale of literature similarly requires that the person asked to buy stop, listen

to the sales pitch, contemplate the item offered for sale, and then act to make the purchase. *See*

*Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 665, 101 S.Ct. 2559,

69 L.Ed.2d 298 (1981) (Blackmun, J., concurring in part and dissenting in part) ("[C]ommon-sense

differences between literature distribution, on the one hand, and *solicitation and sales,* on the other,

suggest that the latter activities present greater crowd control problems than the former.") (emphasis

added). This description of the problems associated with the sale of literature in a busily traversed

7

airport "rings of "common sense,' which is sufficient ... to uphold a regulation under reasonableness review." *Kokinda,* 497 U.S. at 734, 110 S.Ct. 3115 (plurality opinion) (internal citation omitted) (quoting *Heffron,* 452 U.S. at 665, 101 S.Ct. 2559 (Blackmun, J., concurring in part and dissenting in part)).

In accordance with the reasoning set forth in *Lee,* we conclude that the regulations prohibiting solicitation and sale of literature at MIA are reasonable restrictions on speech that withstand appellants' constitutional challenge.[5] First, *Lee* establishes that MIA is a nonpublic forum. Although MIA might serve a number of commercial and other purposes, *see id.* at 688-89, 112 S.Ct. 2701 (O'Connor, J., concurring), the main or primary purpose of the airport is to facilitate air travel, *id.* at 682, 112 S.Ct. 2701 (majority opinion). Contrary to ISKCON's assertion that MIA differs from the New York airports in ways that render MIA a public forum, *Lee*'s determination that airports are not public fora was not limited to the particular airports at issue, but constituted a categorical determination about airport terminals generally. *See Jacobsen v. City of Rapid City, S.D.,* 128 F.3d 660, 662 (8th Cir.1997); *Air Line Pilots Ass'n, Int'l v. Department of Aviation,* 45 F.3d 1144, 1156 (7th Cir.1995); *Multimedia Publ'g Co. of S.C. v. Greensville-Spartanburg Airport*

---

[5]At the outset, we reject ISKCON's argument that the ban on solicitation and sale of literature at MIA is an impermissible content-based regulation. According to ISKCON, the regulation is content-based because it singles out a particular type of speech—specifically, speech that includes a request for funds. We note that in a nonpublic forum, in contrast to a traditional or designated public forum, the government may draw distinctions based upon content in order to preserve government property for its intended uses. *See Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439; *Perry,* 460 U.S. at 49, 103 S.Ct. 948. Of course, viewpoint discrimination is still impermissible. *See Lee,* 505 U.S. at 679, 112 S.Ct. 2701. In any event, the Court has held that this type of prohibition, aimed at the abusive practices associated with solicitation,does not discriminate based upon either content or viewpoint. *See Lee,* 505 U.S. at 706, 112 S.Ct. 2701 (Kennedy, J., concurring); *Kokinda,* 497 U.S. at 736, 110 S.Ct. 3115 (plurality opinion).

*Dist.,* 991 F.2d 154, 158-59 (4th Cir.1993). ISKCON has failed to point to any unique feature of MIA that distinguishes it from other airports in general.

Second, the ban on solicitation and sale of literature for the immediate receipt of funds at MIA is a reasonable response to the County's concerns regarding the risks associated with these activities.[6] In this case, Dade County asserts that the ban on solicitation and sale of literature throughout MIA was implemented to address repeated instances of abusive conduct and misrepresentations on the part of ISKCON members engaged in solicitation and the sale of literature at MIA.[7] The Court in *Lee* recognized the potential for fraud and coercion as valid reasons for banning solicitation in airports. *Lee,* 505 U.S. at 684, 112 S.Ct. 2701 ("[F]ace-to-face solicitation presents risks of duress that are an appropriate target of regulation."); *id.* at 689-90, 112 S.Ct. 2701 (O'Connor, J., concurring). Moreover, as the Court in *Lee* explained, solicitation is in many ways inherently incompatible with the primary purpose of an airport—the facilitation of air travel. Solicitation causes delays and disruptions to travelers, who are often heavily laden with baggage and running on tight schedules, and, therefore, is significantly more intrusive than the mere handing out of literature. *See id.* at 683-84, 112 S.Ct. 2701; *id.* at 689, 112 S.Ct. 2701 (O'Connor, concurring). As discussed above, these same concerns apply with equal force to the sale of literature in airport

---

[6]ISKCON contends that, on its face, § 25-2.2 is not limited to solicitation for the immediate receipt of funds. However, Dade County interprets the regulation to apply only to solicitation for the immediate receipt of funds, and we use the County's interpretation for purposes of our constitutional analysis. *See Ward v. Rock Against Racism,* 491 U.S. 781, 795-96, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

[7]ISKCON argues that its past misconduct at MIA does not justify the ban, and suggests that the ban here operates as a prior restraint. This argument is inapposite, and, in any event, lacks merit. The County amended its regulations to address the risks of fraud and harassment that generally accompany solicitation and sales; the past history of coercion in solicitation and sales at MIA merely strengthens Dade County's argument that the ban is a reasonable one.

thoroughfares. For the reasons set forth in *Lee,* we conclude that the prohibition on solicitation and sale of literature at MIA is a reasonable restriction on speech.

ISKCON offers a number of arguments that, it contends, distinguish the ban at issue here from the ban upheld in *Lee* and support its assertion that the prohibitions at MIA are unconstitutional. For example, ISKCON argues that congestion was the dispositive factor in *Lee,* whereas in this case Dade County's decision to implement the ban on solicitation and sales was motivated by concerns about fraud and misrepresentation. We reject ISKCON's argument that *Lee* turned solely on the issue of congestion. *Lee* upheld the solicitation ban for a number of reasons, including problems posed by solicitation in a congested airport terminal. But *Lee* did not rest on this ground alone; it also emphasized the coercive aspects of face-to-face solicitation that make regulation appropriate. As Chief Justice Rehnquist noted for the Court, "[t]he unsavory solicitor can also commit fraud through concealment of his affiliation or through deliberate efforts to shortchange those who agree to purchase.... [T]he targets of such activity frequently are on tight schedules .... mak[ing] such visitors unlikely to stop and formally complain to airport authorities." *Id.* at 684, 112 S.Ct. 2701. Thus, even if congestion was not a motivating factor behind the County's decision to amend its regulations, we conclude that the County acted reasonably in implementing the bans on solicitation and sales based upon the other problems associated with these activities, as described by the Court in *Lee.*

ISKCON further argues that any problems associated with solicitation or sale of literature can be addressed by regulating these activities, rather than banning them outright. We reject ISKCON's contention that the ban on solicitation is unreasonable because of the possibility of less restrictive alternatives. As Court has repeatedly noted, a restriction on speech in a nonpublic forum

10

will be upheld as long as it is reasonable; "it need not be the most reasonable or the only reasonable limitation." *Kokinda,* 497 U.S. at 730, 110 S.Ct. 3115 (plurality opinion).

ISKCON also argues that the MIA regulations are invalid even under the holding in *Lee* because the ban on solicitation and sale of literature extends to the sidewalks and parking lots surrounding the MIA terminal buildings. ISKCON correctly points out that the ban at issue here is broader than the one in *Lee* since the ban is not limited to the terminal buildings. In *Lee,* the Court noted that, because solicitation was still allowed on the much-traversed sidewalks surrounding the airport terminals, "the resulting access of those who would solicit the general public is quite complete." *Id.* at 684-85. It is true that both the Supreme Court in *Lee* and this court have considered the availability of nearby places open for expressive activity as a factor weighing in favor of the reasonableness of restrictions on speech in a nonpublic forum. *See id.* at 685, 112 S.Ct. 2701; *Daniel v. City of Tampa, Fla.,* 38 F.3d 546, 550 (11th Cir.1994) (footnote omitted) (noting, in upholding ban on distribution of literature at public housing complex, that plaintiff "has unlimited access to the City-owned streets and sidewalks adjacent to the housing complex, allowing him an alternative means for distributing information to residents"); *United States v. Gilbert,* 920 F.2d 878, 886 (11th Cir.1991) (noting that a factor bearing on the reasonableness of a restriction "is the availability of alternative channels of communication"); *United States v. Belsky,* 799 F.2d 1485, 1489 n. 9 (11th Cir.1986) (upholding ban on solicitation on postal sidewalks, noting that "the municipal sidewalks and streets adjoining the postal buildings remain open as public forums for expressive activity").

The presence of nearby physical space available for expressive activity, however, is merely one factor among many in assessing the reasonableness of speech restrictions in nonpublic fora, and

11

we conclude that in this case, the regulations prohibiting solicitation and sales anywhere on airport property constitute a reasonable restriction in the context of the particular nature and purpose of MIA. In *Kokinda,* the Supreme Court upheld a Postal Service regulation that banned solicitation anywhere on postal property, including the post office buildings and the nonpublic sidewalks surrounding the post offices. *Kokinda,* 497 U.S. at 735, 110 S.Ct. 3115 (plurality opinion). Like the sidewalks adjoining the post office at issue in *Kokinda,* the sidewalks and parking lots adjacent to the Miami airport terminals are nonpublic fora; the sidewalks and parking lots are intended by the County to be used for air travel-related purposes, "not to facilitate the daily commerce and life of the neighborhood or city." *Kokinda,* 497 U.S. at 728, 110 S.Ct. 3115 (plurality opinion). The County maintains that the incompatibility between solicitation and sales and the purposes of the airport reaches its zenith on the sidewalks outside the terminal:

> The sidewalks are narrow and extremely congested areas where passengers check their baggage at fixed booths, skycaps wheel carts full of luggage, conveyor belts are used to move baggage and packages, and taxis, vans, and private vehicles drop off and pick up passengers. Due to the layout of the Airport, even a brief delay of persons in these areas can lead to extreme congestion and danger of an accident.

Affidavit of Winona (Dickie) K. Davis, R-1-19-Exh. 1 ¶ 14. It is certainly reasonable for the County to conclude that solicitation and sales of literature would be inconsistent with the particularly hectic nature of the airport sidewalks at MIA.

ISKCON recognizes the problems associated with permitting solicitation and sales of literature on the sidewalks surrounding the terminal buildings, but argues that the County's regulations must permit solicitation somewhere at MIA to pass constitutional muster. As noted above, this contention is contradicted by the Court's opinion in *Kokinda,* which upheld a total ban on solicitation in the nonpublic fora of post office buildings and sidewalks. Likewise, other courts

have upheld regulations that completely ban a particular type of expressive conduct from a nonpublic forum as a reasonable exercise of governmental authority to preserve the forum for its intended uses. *See General Media Communications, Inc. v. Cohen,* 131 F.3d 273, 284-85 (2d Cir.1997) (upholding constitutionality of congressional act prohibiting the sale of sexually explicit materials at military exchanges), *cert. denied,* --- U.S. ----, 118 S.Ct. 2367, --- L.Ed.2d ---- (1998); *Gilbert,* 920 F.2d at 886 (finding injunction prohibiting personal protest inside courthouse and in adjoining portico constitutional). Moreover, the ban in this case does not totally prohibit solicitation or sales of literature. Instead, the regulation only bans solicitation and sales followed by the immediate receipt of funds. Thus, ISKCON is still free both to solicit funds in the airport by pamphleteering and asking travelers to mail in their contributions, and to offer their literature for sale through mail order or in other locations. While these alternatives may be less effective than ISKCON would prefer, ISKCON's ability to seek contributions, for example, by distributing "preaddressed envelopes along with a plea to contribute money," *Lee,* 505 U.S. at 704, 112 S.Ct. 2701 (Kennedy, J., concurring), strengthens our conviction that the ban on solicitation and sales of literature is constitutional. *Accord Cornelius,* 473 U.S. at 809, 105 S.Ct. 3439 ("The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message.").

Unlike the regulations in *Lee,* the regulations challenged here do permit the distribution of free literature in MIA; however, persons wishing to distribute literature are limited to eight areas in the airport designated by the Airport Director as "First Amendment zones." The eight First Amendment zones are placed throughout the airport terminal, away from ticket lines, metal detectors, and exits and entrances, but adjacent to the flow of passenger traffic. ISKCON argues that

13

these zones are insufficient and inadequate. As a general matter, as Dade County notes, airports may limit First Amendment activities to particular zones in the terminal buildings. *See Lee,* 505 U.S. at 692-93, 112 S.Ct. 2701 (O'Connor, J., concurring); *see also Heffron,* 452 U.S. at 654, 101 S.Ct. 2559 (upholding regulation restricting sale or distribution of literature on fair grounds to certain fixed locations). Such regulations are valid place restrictions on speech. *See Lee,* 505 U.S. at 692-93, 112 S.Ct. 2701 (O'Connor, J., concurring). In support of its argument that MIA's First Amendment zones are insufficient, ISKCON introduced expert testimony that the current zones are not the best zones for the promotion of expressive activities. As Dade County points out, however, absent more concrete evidence showing that the areas for speech activities at MIA are insufficient, questions concerning the allocation of space for speech activities in the airport are for the Director of MIA. *See Ward,* 491 U.S. at 799, 109 S.Ct. 2746 (" "The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted.") (alteration in original) (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)); *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 299, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (noting that the First Amendment does not give the judiciary "the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise").

Finally, ISKCON argues that § 25-2.2(d) impermissibly grants the Director of MIA unfettered discretion to select the areas within MIA where First Amendment activities are allowed. As noted above, airport authorities may legitimately set time, place, and manner restrictions on the

14

exercise of First Amendment activities. However, the discretion to set such restrictions cannot be so broad that it "becom[es] a means of suppressing a particular point of view." *Heffron,* 452 U.S. at 649, 101 S.Ct. 2559. Because the challenged provisions concern the ability of the Director to restrict the areas in which distribution activities may take place, not the ability of the Director to exclude certain persons from those areas, we reject ISKCON's argument that the authority granted to the Director by the regulations is facially unconstitutional. *See Ward,* 491 U.S. at 795 n. 5, 109 S.Ct. 2746 (rejecting argument that city sound-amplification guideline operated as a prior restraint on speech, because guideline "grants no authority to forbid speech, but merely permits the city to regulate volume to the extent necessary to avoid excessive noise").

Accordingly, the judgment of the district court is AFFIRMED.