Tazwell B. HARDEN, Plaintiff,

v.

DELTA AIR LINES, INC., Defendant.

No. CV 494–258.

United States District Court,
S.D. Georgia,
Savannah Division.

July 26, 1995.

Todd Andrew Hall, Kingsport, TN, for plaintiff.

John Milton Tatum, Miller, Simpson & Tatum, Savannah, GA and Jeffrey W. Willis, Thomas J. Munger, and Hunter R. Hughes, Rogers & Hardin, Atlanta, GA, for defendant.

## ORDER

NANGLE, District Judge.

Before the Court is the motion for summary judgment filed by defendant Delta Air Lines, Inc. Fed.R.Civ.P. 56. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Plaintiff Harden was employed by defendant Delta Air Lines, Inc. ("Delta") in Savannah, Georgia, beginning in 1968. In 1975, Mr. Harden became a Senior Customer Service Agent ("SCSA"). The duties of an SCSA include working at the ticket counters, gates, and baggage rooms, loading and unloading aircraft, hooking up hoses to the aircraft, maintaining vehicles, and parking aircraft. Twenty-five of Delta's thirty employees in Savannah are SCSAs. Mr. Harden was a SCSA at Delta from 1975 until 1993. In April, 1991, Mr. Harden was injured in a car wreck outside of work in which he tore the rotator cuff in his right shoulder and aggravated his osteoarthritis and joint problems.

Immediately after the accident, plaintiff took vacation and sick leave benefits that he had accrued. After those benefits expired, plaintiff applied for and received short-term disability benefits from Delta's Family–Care Disability and Survivorship Plan. In his application for these benefits, plaintiff's physician stated that plaintiff was totally disabled and that his condition would continue to worsen. In August 1991, plaintiff fell off of a ladder and sustained a tear in the rotator cuff of his left shoulder. At this time, plaintiff was treated by another physician for his shoulder injuries and osteoarthritis. In September, 1991, after his short-term disability benefits expired, plaintiff applied for long-term disability benefits. Total disability is a requirement for long-term disability benefits and plaintiff claimed he was totally disabled. The Plan conducted an investigation, including sending Mr. Harden to an independent medical examiner and to a work recovery center. Both sources concluded that plaintiff could not return to his SCSA job but could perform sedentary, or light, work. Plaintiff pursued an appeal of the Plan's decision and it was later affirmed.

After flying plaintiff to Atlanta for a placement interview, Delta offered him a clerical position in Atlanta by letter dated March 24, 1992. Plaintiff's attorney sent a letter stating that plaintiff could not continue his employment with Delta because he was totally disabled. Plaintiff asserts in his brief that he refused the offer because he could not endure extended periods of fine hand manipulation, could not live in Atlanta on one-third less pay, and could not commute every day from Savannah to Atlanta. Delta offered plaintiff the position again in August, 1992, but plaintiff again turned down the job. In early 1993, after a placement request from plaintiff, Delta's Equal Opportunity Analyst discussed a Bank Reconciliation Clerk position in Atlanta with plaintiff but he declined to pursue that option as well.

In April, 1993, plaintiff quit his employment with Delta and applied for unemployment benefits. Plaintiff was awarded benefits and the decision was affirmed on appeal. In July, 1993, plaintiff filed a charge with the EEOC against Delta alleging a violation of the Americans with Disabilities Act of 1990 ("ADA"). On November 4, 1994, he filed this complaint alleging the same cause of action.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such a showing shifts to the nonmovant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). "Factual disputes that are irrelevant or unnecessary will not be counted," *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991) (citation omitted), and a mere scintilla of evidence supporting the nonmovant's position will not fulfill this burden. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

### B. Prima Facie Case under the ADA

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Employers are prohibited from discriminating against such individuals with regard to "job application procedures, the hiring, advancement, or discharge of employees, employees compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case of discriminatory discharge under the Americans with Disabilities Act, a plaintiff must establish that (1) he has a disability, (2) he is a qualified individual, that is with or without a reasonable accommodation, which plaintiff must describe, he is capable of performing the essential functions of the job, and (3) he was terminated by reason of his disability. *White v. York International Corp.*, 45 F.3d 357, 361–62 (10th Cir.1995); *see also Sawinski v. Bill Currie Ford, Inc.*, 881 F.Supp. 1571, 1573 (M.D.Fla.1995)

For purposes of the motion for summary judgment, defendant concedes that plaintiff has a disability under the provisions of the ADA. Defendant asserts that plaintiff cannot meet the second prong of the prima facie case, i.e. that he is not a qualified individual for purposes of the statute. A qualified individual with a disability is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant asserts that plaintiff cannot perform the essential functions of an SCSA either with or without reasonable accommodation. Plaintiff asserts that with a reasonable accommodation he could perform the SCSA job which he held in 1991.

### C. Qualified Individual With a Disability

In order to determine whether an individual is qualified for a job, the Court must first determine whether a person could perform the essential functions of a job and, if not, whether a reasonable accommodation could be made so that the person can perform the essential functions of the job. *White*, 45 F.3d at 361–62 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)). The Court finds that plaintiff cannot perform the essential functions of a SCSA and that no reasonable accommodation would allow him to perform those functions.

#### 1. Plaintiff's Claims of Total Disability

The Court first notes that it finds plaintiff's argument that he can perform the essential functions of the SCSA job, or any job, disingenuous given plaintiff's assertions of total disability in this matter. Plaintiff, or his physician or attorney, maintained from at least 1991 until April 1, 1992, that he was totally disabled when he was applying for long-term disability benefits. On plaintiff's long-term disability notice dated September 15, 1991, he was asked "Are you now totally disabled and unable to work at any occupation?" To this question, plaintiff responded "Yes." (Exhibit 15 to Harden Deposition.) In plaintiff's attorney's letter to the Delta Family–Care Pilots Plan dated March 11, 1992, the attorney states that the attached letter from Dr. Holland "outlines Mr. Harden's basic physical problems which, in Dr. Holland's opinion, disable Mr. Harden from even the most sedentary type activities."

(Ex. 21 to Harden Dep.) Dr. Holland's attached letter, dated March 19, 1992, states that the plaintiff's medical problems "completely and totally disable this patient." After plaintiff was offered the clerical position in Atlanta in March of 1992, his attorney responded by letter dated April 1, 1992, that "Mr. Harden would very much like to continue working with Delta but unfortuneately [sic] is unable to do so by virtue of his total disability brought about by his severe osteoarthritis and severely damaged rotator cuffs bilaterally." (Ex. 23 to Harden Dep.).

At the unemployment benefits hearing in June of 1993, after he was denied long-term disability benefits on appeal, plaintiff indicates that he believes it possible that if he went back to his doctor he could get a letter saying he could go back to work because "you get better over a period of time." (Ex. 31 to Harden Dep. at page 24). The problem with that argument, both at the unemployment benefits hearing and in this case, is that plaintiff has offered no evidence that his disability has lessened. He does not introduce any doctor reports indicating that his condition has improved. In fact, at least one of his physicians opined that his condition would continue to worsen. (Ex. 11 to Harden Dep. at page 2). Ironically, the only evidence plaintiff relies on to show he is now not totally disabled are the reports showing that he could do sedentary or light work, the same reports he challenged when seeking long-term disability benefits.

A similar situation existed in *Reigel v. Kaiser Foundation Health Plan,* 859 F.Supp. 963, 974 (E.D.N.C.1994). In *Reigel,* a physician suffered a shoulder injury causing her to be unable to perform the functions of her job. *Id.* at 964–65. She repeatedly certified that she was unable to return to work when applying for disability benefits. *Id.* at 967–69. This Court joins the Eastern District of North Carolina in finding it "incredible" that a plaintiff would claim that he was discriminated against by his employer for failing to make reasonable accommodations while representing to various entities

that he was unable to work. *Id.* at 974. As in *Reigel,* the plaintiff in this case cannot "speak out of both of sides of [his] mouth," *id.* at 970, without offering any evidence whatsoever that his condition has changed. There is no reasonable accommodation that can be given to allow a totally disabled person, as plaintiff claims he was, to perform essential functions of any job.

*2. Essential Function*

■ Plaintiff also fails to show that he can perform the essential functions of the SCSA job because he cannot perform the 70 pound lifting requirement, either with or without reasonable accommodation, which is an essential function of the job.

Plaintiff offers no probative evidence to show that he can meet the lifting requirement.[1] Instead, he argues that heavy lifting is not an essential function of the SCSA job. An essential function "means the fundamental job duties of the employment position that the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

---

1. Plaintiff asserts in his brief that the work recovery center found that he could lift over 70 pounds at bench height but not at shelf height. As he notes, however, at least some of the heavy lifting required of an SCSA is lifting above the shoulders. Therefore, he cannot meet the 70 pound lifting requirement of an SCSA.

498

29 CFR § 1630.2(n)(3). The first two factors weigh heavily in favor of showing that the lifting requirement is an essential function of the SCSA job. Richard Ealey, Director of Equal Opportunity with Delta, testified in his affidavit that Delta considers heavy lifting to be "an essential part of the SCSA job." (Ealey Aff. ¶ 4). Furthermore, in the job description for an SCSA, lifting or carrying a minimum of 70 pounds is listed under "Key Skills/Experience Required" on the first page. (Ex. 2 to Harden's Dep.). Moreover, the job of SCSA is a physically demanding one. According to Ealey, an SCSA must load and unload baggage, hook up fuel and air conditioning hoses to the airplanes, and operate various pieces of equipment and aircraft doors. (Ealey Aff. ¶ 5).

Plaintiff argues that heavy lifting is not an essential requirement because he could "bid a line" which did not require heavy lifting. In Savannah, Delta uses a bidding system whereby approximately every six months SCSAs bid on a set of primary tasks (a "line"). These lines are assigned based on seniority. Ealey states in his affidavit that all SCSAs in Savannah, regardless of the line they are assigned to, must be able to meet the physically demanding aspects of the job because an SCSA cannot be sure about which line the SCSA is to receive and extra personnel are often assigned to tasks so as not to delay flights, especially where there is a small crew as there is in Savannah. (Ealey Aff. ¶ 10).

Plaintiff argues that because "crossover" of job responsibilities is not listed in the job requirement, lifting is not an essential job function. This argument is wholly lacking in merit. The precise reason why an employer would list numerous job requirements for a job is so that an employee could perform all of those functions if he is needed to do so. The Court finds that the 70 pound lifting requirement is an essential job function of an SCSA.

### 3. Reasonable Accommodation

Since the lifting requirement is an essential function of the job and plaintiff cannot perform it without reasonable accommodation, the next step the Court must address is whether plaintiff could perform this function with a reasonable accommodation. Plaintiff must produce evidence sufficient to make a facial showing that accommodation is possible, then the burden shifts to the employer to present evidence of its inability to accommodate. If the employer presents such evidence, the plaintiff must come forward with evidence showing his capabilities and suggestions for possible accommodation. White, 45 F.3d at 360. Plaintiff has failed to make even a facial showing that accommodation is possible in this case.

Plaintiff's argument seems to be that because of the line bidding procedure, Delta could reasonably accommodate him by assigning him to a line where heavy lifting is not required. There are two problems with this argument. First, plaintiff overlooks Delta's need to have all SCSAs capable of performing all job duties in case they are needed to assist in another area.

Second, reasonable accommodation does not require the employer to reassign or eliminate an essential job function. Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir.1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job."); see also Larkins v. CIBA Vision Corp., 858 F.Supp. 1572, 1583 (N.D.Ga.1994) (holding that elimination of essential job function not required by ADA) and 29 C.F.R. Pt. 1630, App. § 1630.2(o). Therefore, no reasonable accommodation exists that would allow plaintiff to perform the essential functions of an SCSA.

Plaintiff argues that Delta's offers of a clerical position in Atlanta is not a reasonable accommodation. However, plaintiff does not argue that he should be allowed to perform another job with Delta but only that he can perform the SCSA job if Delta makes a reasonable accommodation. Because the Court has found that there is no reasonable accommodation that can be made that would allow plaintiff to perform his former job, his argument that the offered jobs were unreasonable is irrelevant.

Even if plaintiff had clearly argued that Delta should have found another position for

him in Savannah, or found a position for him with his full pay in Atlanta, plaintiff fails to make a showing that such accommodation was possible. He does not identify any vacant position for which he was qualified that he was not offered. A vague assertion that another position should be found is not enough for plaintiff to carry his burden. *See Scrivner*, 53 F.3d at 1125. Moreover, the ADA regulations do not require promotion, reassignment to an occupied position, or creation of a new position for a disabled worker. *White*, 45 F.3d at 362 (citing 29 C.F.R. pt. 1630, App. § 1630.2(*o* )). As a matter of law, defendant has shown that plaintiff cannot demonstrate that he is a qualified individual with a disability. Therefore, defendant is entitled to summary judgment.

### III.   CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment be and is granted.