Robert E. ALLEN, Plaintiff,

v.

**GEORGIA POWER COMPANY,**
**Defendant.**

No. CIV.A. 1:96–CV–1440–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 15, 1997.

---

Michael James Hofrichter, Rogers & Hofrichter, Fayetteville, GA, Timothy J. Buckley, III, Finley & Buckley, Atlanta, GA, for Plaintiff.

Stephen William Riddell & Ashley Zeiler Hager, Troutman Sanders, Atlanta, GA, for Defendant.

## ORDER

HULL, District Judge.

Plaintiff Robert E. Allen brings this employment discrimination action against Defendant Georgia Power Company under the Americans with Disabilities Act ("ADA"). This matter is before the Court on Defendant's Motion for Summary Judgment.

### I. *FACTS*

Plaintiff began his employment with the Defendant Georgia Power Company in 1976 and, shortly thereafter, became an electrician with Defendant. Plaintiff has worked as an electrician in Defendant's Plant Bowen facility since 1989. In January 1993, Plaintiff injured his back when he and a co-worker attempted to lift cross-ties onto a truck. The following day, Plaintiff was examined by Dr. Darrell Dean, who released Plaintiff to return to work in a light duty capacity. Specifically, Plaintiff was precluded from stooping, bending, and lifting over 25 pounds.

Subsequently, Plaintiff experienced leg pain, in addition to the back pain, and was not able to perform numerous job tasks that all electricians at Plant Bowen were required to perform. Specifically, Plaintiff's physical

limitations precluded Plaintiff from (1) climbing ladders, (2) bending, (3) lifting more than 25 pounds, (4) twisting his upper body, (5) squatting, or (6) standing, sitting, or walking for long periods of time. Plaintiff also was unable to work more than eight hours a day.

Because of his physical limitations, Plaintiff was unable to complete many of the work orders that were distributed generally to the electricians at Plant Bowen. Therefore, the foremen, who distributed the work orders, attempted to give Plaintiff only the work orders they thought he might be able to complete. Often, Plaintiff was not able to complete these tasks, complaining that his back or leg hurt. Consequently, Plaintiff's supervisors gave Plaintiff only the lightest, least physically demanding jobs they could find for him. While Defendant does not maintain any "light duty" positions, Plaintiff remained on this "light duty" status for more than two and one-half years. During this time, Plaintiff received the same pay and benefits as all electricians who were performing the more physically demanding tasks that Plaintiff could not perform.

After allowing Plaintiff to perform only limited types of work for two and one-half years, Defendant terminated Plaintiff's employment in June 1995.[1] The parties dispute why Plaintiff was terminated at this time. According to Defendant, Plaintiff's "light duty" status was only temporary. Defendant believed that Plaintiff's condition was improving and terminated Plaintiff only when it discovered that Plaintiff reached maximum medical improvement and still could not perform many of the tasks of the regular electricians.

According to Plaintiff, Defendant knew since at least May 1994, over a year before Defendant terminated Plaintiff, that Plaintiff's condition had reached maximum medical improvement. Plaintiff alleges that Defendant terminated him in June 1995 in an effort to "lop off ... dead weight." (Pl.'s Br. at 6.)

In any event, Plaintiff alleges that Defendant's terminating him was discrimination.

First, Plaintiff seems to allege that at the time he was terminated, he was able to perform all essential functions of his position as an electrician at Plant Bowen. This allegation is based on Defendant's changing, in April 1995, the way work orders were distributed. Prior to April 1995, supervisors distributed work orders. Starting in April 1995, Defendant implemented a self-directed work force method whereby electricians would select assignments from a stack of work orders. Plaintiff contends that once Defendant implemented its self-directed work force method, the only essential function of an electrician was to "busy herself or himself with work assignments...." (Pl.'s Br. at 11.) Plaintiff alleges that he performed all essential functions of his position because he kept himself busy with work assignments.

Alternatively, Plaintiff alleges that Defendant's allowing him to continue to perform only limited kinds of assignments would have been a reasonable accommodation for his disability and Defendant's terminating him, thus, constituted failure to reasonably accommodate his disability. Plaintiff also alleges that Defendant failed to reasonably accommodate his disability in any other way.

Defendant challenges Plaintiff's characterization of what constituted the essential functions of an electrician at Plant Bowen. Defendant also contends that it attempted to determine what, if any, reasonable accommodation(s) could be made for Plaintiff's disability. Defendant contends that no such reasonable accommodations were available.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) defines the standard for summary judgment as follows: courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the

---

1. The parties appear to dispute whether Plaintiff actually has been terminated. However, viewing the facts in the light most favorable to Plaintiff, the Court assumes Plaintiff was terminated for purposes of Defendant's Motion for Summary Judgment.

court that no genuine issue of material fact should be decided at trial. *Haves v. City of Miami,* 52 F.3d 918, 920 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–09 (11th Cir.1991). Unless the movant for summary judgment meets its burden under Federal Rule of Civil Procedure 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion. *Clark,* 929 F.2d at 607–08.

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.,* at 250, 106 S.Ct. at 2511; *see also Haves,* 52 F.3d at 920 ("[A] genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor."). A mere scintilla of evidence is insufficient to create a jury question; rather, there must be conflict in substantial evidence to create question for jury. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910 (11th Cir.1996). Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.,* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing

that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court interpreted Federal Rule of Civil Procedure 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

### III. *DISCUSSION*

A. *Elements For An ADA Cause Of Action*

The Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Amendments Act of 1991, 42 U.S.C. § 12101 *et seq.,* prohibits an employer from discrimination based upon the known physical or mental impairments of a qualified individual with a disability. 42 U.S.C. § 12112; *Harris v. H & W Contracting,* 102 F.3d 516, 519 (11th Cir.1996). In order to state a claim under the ADA, Plaintiff first must show that he is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. § 12112; *Harris,* 102 F.3d at 519; *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *modified on reh'g,* 102 F.3d 1118 (11th Cir.1996).

The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997); *see also School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130–31 n. 17, 94 L.Ed.2d 307 (1987) (referencing identical provision of the Rehabilitation Act of 1973).[2] Thus, to be a "qualified individual with a disability," Plaintiff must show (1) that he

---

**2.** The ADA specifically provides that it shall be construed consistent with the Rehabilitation Act of 1973, 29 U.S.C. § 793 (1994), and the regulations issued pursuant to the Rehabilitation Act. *See* 42 U.S.C. § 12201(a) (1994). The legislative history of the ADA notes that the definition of

"qualified individual with a disability" is "comparable to the definition used in regulations implementing Section 501 and Section 504 of the Rehabilitation Act of 1973." S.Rep. No. 116, 101st Cong., 1st Sess. 26 (1989).

has a disability, and (2) that he can perform the essential functions of his position despite his disability, or, can perform the *essential functions of his job with a reasonable accommodation for his disability. See Holbrook,* 112 F.3d at 1526 ("[T]o establish a *prima facie* case of discrimination in violation of the ADA, the plaintiff must prove that (1) he has a disability, (2) he is a qualified individual, and (3) he was subject to unlawful discrimination because of his disability.") (emphasis supplied); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996) (per curiam); *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 944 (N.D.Ga.1995), *aff'd,* 87 F.3d 1331 (11th Cir. 1996). Plaintiff seems to argue both.

Once Plaintiff satisfies the requirement of being a "qualified individual with a disability," Plaintiff then must show that Defendant discriminated against him because of his disability. *Holbrook,* 112 F.3d at 1526; *Harris,* 102 F.3d at 519; *Pritchard,* 92 F.3d at 1132; *Lewis,* 908 F.Supp. at 944. In this case, Plaintiff alleges that Defendant discriminated against him by not reasonably accommodating his disability. *Cf. Harris,* 102 F.3d at 516. Alternatively, Plaintiff seems to argue that he was performing the essential functions of his position without any accommodation and, thus, Defendant's terminating him based on his disability was, in essence, a per se violation of the ADA. *Cf. Harris,* 102 F.3d at 524.

B. *Plaintiff Has Not Shown That He Could Perform The Essential Functions Of The Position Of Electrician At Plant Bowen Without Accommodation*

For purposes of its Motion for Summary Judgment, Defendant does not contest that Plaintiff has a disability for purposes of the ADA. Rather, Defendant contends that Plaintiff was not a qualified individual with a disability because (a) Plaintiff cannot perform the essential functions of an electrician at Georgia Power without accommodation; and (b) Plaintiff has not shown that there is a reasonable accommodation that would allow Plaintiff to perform these essential functions. The Court addresses first what are the essential functions of the position of electrician at Plant Bowen and then whether Plaintiff

can perform these functions without any accommodation.

1. *The Essential Functions of the Position of Electrician at Plant Bowen*

The Eleventh Circuit noted recently in *Holbrook v. City of Alpharetta,* 112 F.3d 1522 (11th Cir.1997), that "the ADA provides that in determining what functions of a given job are deemed to be essential, 'consideration shall be given to the employer's judgment ... and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.'" *Id.* at 1526 (quoting 42 U.S.C. § 12111(8)); *see also* 29 C.F.R. § 1630.2(n)(3)(i); *Riel v. Electronic Data Sys. Corp.,* 99 F.3d 678, 682 (5th Cir. 1996) ("[W]henever an employer gives written descriptions of the essential functions of a job, those descriptions are entitled to substantial deference."); *Whillock v. Delta Air Lines, Inc.,* 926 F.Supp. 1555, 1563 (N.D.Ga. 1995), *aff'd,* 86 F.3d 1171 (11th Cir.1996); *Johnston v. Morrison, Inc.,* 849 F.Supp. 777, 778 (N.D.Ala.1994).

Regulations promulgated under the ADA further identify three factors that can be considered pursuant to an inquiry regarding whether a particular task is an essential part of a job: (1) the reason the position exists is to perform the function; (2) there are limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function. *Holbrook,* 112 F.3d at 1526 (citing 29 C.F.R. § 1630.2(n)(2)(i)–(iii)).

██ Here, the undisputed evidence, including a prepared list of essential job functions and job requirements prepared in August 1992, shows that the electricians at Defendant's plants, including Plant Bowen, are responsible for numerous different tasks. These tasks may include maintaining, repairing, and rebuilding motors, installing controls, working on valves, running conduit, and pulling cables. To perform these tasks, electricians are required, *inter*

*alia,* to (1) climb ladders and work on elevated surfaces, (2) bend and stoop (and bend repeatedly), (3) lift objects weighing 50 pounds, (4) stand upright for lengths of time, and (5) twist or rotate the body (and rotate repeatedly). While there are job assignments that do not require these very functions, the evidence shows that it is essential that regular electricians be able to perform the above physical movements in order to perform many of the tasks the electricians at Plant Bowen were required to complete. In his deposition, Plaintiff admits such. (Allen Dep. at 52–54.)

Further, the above-listed tasks that require the physical movements are among the tasks that Defendant hires electricians to perform; some (if not all) of the functions are specialized and, thus, require the expertise and ability Plaintiff possessed when he was initially hired into the position; and, Defendant's undergoing a massive downsizing ultimately would result in reduced numbers of electricians to perform these type of tasks, which Plaintiff was unable to perform. Notably, Plaintiff's inability to perform many of the more physically demanding work assignments resulted in Plaintiff's co-workers' being forced to complete all of the more physically demanding work assignments. Plaintiff's co-workers complained that Plaintiff was not carrying his share of the workload.

Plaintiff does not appear to contest that the above physical movements were essential functions of the position of electrician at least up until April 1995. However, Plaintiff contends that in April 1995, when Defendant changed to a self-directed work force, the only essential function of the position of electrician was to keep himself busy. All that was required of each electrician was to select work assignments each electrician felt he could complete and complete them.

Plaintiff's argument misapprehends the nature of essential functions. Plaintiff's argument focuses not on the essential functions of an electrician at Plant Bowen, but rather how assignments are distributed. The essential functions of a position are not altered, especially on the facts here, where the type of assignments are the same, but only the

manner in which the assignments have been distributed has changed. When Defendant's supervisory employees distributed work assignments, they undoubtedly relied on the assumption that each of their electricians could perform any of the tasks that were assigned. This is no less a concern in a self-directed work force. If anything, in a self-directed work force, Defendant needed a greater confidence that each of its electricians could perform any assigned tasks. But in any event, Plaintiff fails to present any evidence that Defendant's changing the way assignments were distributed in any way altered the essential functions of the position of electrician at Plant Bowen.

Considering the foregoing, the Court finds that the uncontroverted evidence shows that the essential functions of the position of electrician require the above physical movements that Plaintiff admittedly cannot perform, as discussed below.

### 2. *Plaintiff Cannot Perform the Essential Functions of His Position Without Accommodation*

As an initial matter, the Court notes that it is undisputed that Plaintiff cannot perform the functions that require the above physical movements. According to a statement submitted by Plaintiff's physician accompanying Plaintiff's application for long term disability benefits, Plaintiff is required to avoid repetitive bending, stooping, lifting, or twisting. (Ex. A to Pittman Aff.) The statement also notes that Plaintiff may lift up to fifteen pounds frequently, and up to twenty-five pounds only occasionally. Plaintiff repeatedly admits these facts and also repeatedly admits that he (a) cannot climb ladders, (b) cannot squat, and (c) cannot stand, sit, or walk for long periods. Indeed, in his deposition, he admits that he "cannot perform the task of electrician. It's been established, documented and everything." (Allen Dep. at 176–77.)

Plaintiff's contention that he can perform the essential functions of an electrician is based on the following two interrelated assertions: (1) that essential functions of the position of electrician changed in April 1995 when Defendant changed to a self-directed

work force; and (2) that Plaintiff had been performing adequately in the position of electrician in the thirty months following his injury. In support of both assertions, Plaintiff stresses that the work he has been doing was not created for him but rather were assignments that the electricians at Plant Bowen regularly performed. Plaintiff challenges Defendant's assertion that he was performing "light duty" work.

■ For the reasons discussed above, the Court rejects Plaintiff's assertion that the essential functions of the electrician position changed when Defendant switched to a self-directed work force. The Court likewise rejects Plaintiff's assertion that the fact that he remained in the electrician position for thirty months after his injury shows that he can perform the job without accommodation. In fact, Plaintiff was performing the duties he performed with a temporary accommodation provided by his employer—that is, Plaintiff was required to complete only certain limited types of assignments. Plaintiff's ability to perform these limited duties does not speak to whether Plaintiff can perform all of the essential functions of the position of electrician.

Finally, Plaintiff's argument that he was never on "light duty" status is disingenuous. It is undisputed that the types of tasks Plaintiff performed in the two and one-half years following his injury were the types of tasks electricians at Plant Bowen normally performed. However, it is equally undisputed that Plaintiff performed only the least physically demanding jobs available, leaving others to complete the more physically demanding tasks. In fact, in his Brief Plaintiff refers to his post-injury position as his "modified position of electrician." (Pl.'s Br. at 6.) Whatever label Plaintiff wishes (or does not wish) to place on the type of duties he completed, the tasks accurately can be considered "light duty." Again, Plaintiff's ability to perform these "light duty" tasks does not indicate that Plaintiff can perform all the essential functions of the position of electrician. Indeed, the fact that Plaintiff had to be placed on "light duty" status shows that Plaintiff was unable to perform all the essen-

tial functions of the position electrician at Plant Bowen.

In sum, the Court finds that Defendant has shown by affirmative evidence that Plaintiff cannot perform the essential functions of his position of electrician without accommodation and Plaintiff fails to present sufficient evidence to create a jury question whether he is able to perform the essential functions of the position of electrician without accommodation.

C. *Plaintiff Has Not Shown There Is A Reasonable Accommodation For His Disability Or That Defendant Discriminated Against Plaintiff Based On His Disability*

1. *Plaintiff Has Not Shown that There is a Reasonable Accommodation for His Disability*

■ Because Plaintiff cannot show that he can perform essential functions of his position without accommodation, Plaintiff must show that he can perform the essential functions of his position with a reasonable accommodation. *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir.1997) ("[E]stablishing that a reasonable accommodation exists is a part of an ADA plaintiff's case ....") (per curiam); *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir.1996) (per curiam); *Lewis*, 908 F.Supp. at 946; *Whillock*, 926 F.Supp. at 1563. Inasmuch as no reasonable accommodation has been provided here (because Defendant contends there is not one), Plaintiff's showing the existence of a reasonable accommodation would in effect show that Defendant failed to reasonably accommodate Plaintiff's disability—a violation of the ADA. However, if Plaintiff cannot show the existence of a reasonable accommodation, Plaintiff will be unable to show that he is a qualified individual with a disability.

■ What is a reasonable accommodation for a given employer is a highly fact specific inquiry that will vary depending on the circumstances and necessities of each employment situation. *Holbrook*, 112 F.3d at 1527. The Eleventh Circuit acknowledged in *Holbrook* that federal regulations promulgated pursuant to the ADA note that:

An employer or other covered entity may restructure a job by reallocating or redistributing non-essential, marginal job functions.... An employer or other covered entity is not required to reallocate essential functions. The essential functions are by definition those that the individual who holds the job would have to perform, with or without accommodation, in order to be considered qualified or the position.

*Id.*, at 1527–28 (quoting 29 C.F.R. Pt. 1630, Appendix at 344); *see also Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124, (10th Cir.1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job."); *Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1583 (N.D.Ga.1994) ("[R]easonable accommodation does not require an employer to eliminate essential functions of the position."). Thus, while it may be reasonable for an employer to shuffle some of the duties of a particular position in issue, the employer is not require to eliminate any essential job functions. *Holbrook*, 112 F.3d at 1528; *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996).

 This brings us to the difficulty with Plaintiff's first suggested "reasonable" accommodation—that is, that Plaintiff be allowed to continue in the capacity in which he was placed for the two and one-half years following his injury. This proposed accommodation is unreasonable as a matter of law because it would force Defendant to eliminate essential functions of Plaintiff's position under the guise of reasonably accommodating Plaintiff's disability. *Whillock*, 926 F.Supp. at 1565 ("The use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires."). The Court notes that Defendant is not required to provide Plaintiff with the maximum accommodation possible or the accommodation Plaintiff desires, but only a reasonable accommodation. *Vande Zande v. State of*

*Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir.1995).

Plaintiff's proffered accommodation is not made reasonable by the fact that Defendant permitted Plaintiff to remain at work on "light duty" for the two and one-half years following Plaintiff's injury. Inasmuch as Defendant's temporary accommodation of Plaintiff's disability eliminated certain job functions, Defendant exceeded what the law required. *See Holbrook*, 112 F.3d at 1528 ("[T]he City of Alpharetta's previous accommodation may have exceeded that which the law requires.... [W]e cannot say that the City's decision to cease making those accommodations that pertained to the essential functions of Holbrook's job was violative of the ADA."); *Vande Zande*, 44 F.3d at 545 ("[I]f the employer ... goes further than the law requires ..., it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."); *McCollough v. Atlanta. Beverage Co.*, 929 F.Supp. 1489, 1503 (N.D.Ga.1996).

 Further, numerous courts have held that where an employer does not have a permanent "light duty" position, it is not required to create one or convert a temporary "light duty" position into a permanent one for purposes of accommodating an employee's disability. *Holbrook*, 112 F.3d at 1528; *Cochrum*, 102 F.3d at 912–13; *McCollough*, 929 F.Supp. at 1503; *Mott v. Synthetic Indus., Inc.*, No. 4:94–CV–248–RLV, 1995 WL 584734, at *4 (N.D.Ga. Aug.9, 1995); *Champ v. Baltimore County*, 884 F.Supp. 991, 1000 (D.Md.1995), *aff'd*, 91 F.3d 129 (4th Cir.1996); *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994); *Nguyen v. IBP, Inc.*, 905 F.Supp. 1471, 1485–86 (D.Kan.1995). Based on the foregoing, the Court finds that Plaintiff's proffered accommodation to remain on or return to "light duty" status—or however Plaintiff chooses to characterize it—permanently throughout his remaining employment is unreasonable as a matter of law.[3]

---

**3.** The ADA does not require an employer to create a "light duty" position unless the "heavy duty" tasks an injured worker can no longer perform are marginal job functions that may be reallocated to co-workers as part of the reasonable accommodation of job-restructuring. In most cases, however, "light duty" positions involve a totally different job from the job that a

Plaintiff's only two other proffered accommodations are that Defendant could have transferred Plaintiff to fill one of two vacancies in other positions for which Plaintiff asserts that he is qualified—namely, vacancies in the positions of toolroom keeper or storekeeper. "[R]eassignment to vacant position is another possible accommodation under the ADA." *Cochrum,* 102 F.3d at 913; *see also* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii). However, "[t]he ADA may only require an employer to reassign a disabled employee to a position for which the employee is otherwise qualified." *Cochrum,* 102 F.3d at 913 (quoting *Gile v. United Airlines. Inc.,* 95 F.3d 492, 499 (7th Cir.1996)).

As an initial matter, Plaintiff argues that contrary to what Defendant has represented, Defendant did not engage in efforts to find a reasonable accommodation for Plaintiff's disability, by attempting to locate vacant positions for which Plaintiff was qualified, or otherwise. Even if this were true, it does not violate the ADA. *See Moses,* 97 F.3d at 448 ("American's failure to investigate [the existence of reasonable accommodations] did not relieve Moses of his burden of producing probative evidence that reasonable accommodations were available."). The fact remains that Plaintiff must show that a reasonable accommodation exists. *Id.; see also Willis,* 108 F.3d at 286.

Moreover, Plaintiff has not shown that Defendant's transferring Plaintiff to one of the aforementioned vacant positions is a reasonable accommodation. The evidence shows that both of these positions require functions that are comprised of the same physical movements (of which Plaintiff is incapable of performing) that render Plaintiff unqualified for his position as an electrician. Specifically, both require Plaintiff to (1) bend, (2) twist his upper body, (3) lift objects over twenty five pounds, (4) stand upright for lengths of time, and (5) use muscle force to push or pull objects. Because Plaintiff cannot perform these tasks and, thus, is unqualified for these positions, forcing Defendant to transfer Plaintiff to either of these positions is unreasonable as a matter of law. *See Cochrum,* 102 F.3d at 913.[4]

Because Plaintiff fails to satisfy his burden to show that there is a reasonable accommodation that would allow Plaintiff to perform the essential functions of his position, Plaintiff cannot show that he is a qualified individual with a disability, or, that Defendant unlawfully failed to reasonably accommodate Plaintiff's disability.[5]

2. *Plaintiff's Admitted Total Disability Estops Plaintiff from Contending that He is a Qualified Individual with a Disability*

Alternatively, even assuming *arguendo* that Plaintiff presents sufficient evidence to create jury issues whether he can perform the essential functions of his position with or without reasonable accommodation, the Court finds that Plaintiff is estopped from arguing that he is a qualified individual with a disability. The evidence shows that prior to filing this lawsuit, Plaintiff applied for long-term disability benefits, contending that he was no longer able to perform his job

---

worker performed before the injury. Creating such position by job restructuring is not required by the ADA. However, if an employer already has a vacant light duty position for which an injured worker is qualified, it might be a reasonable accommodation to reassign the worker to that position. If the position created was a temporary job, a reassignment to that position need only be for a temporary period. *Mott,* 1995 WL 584734, at *4. Here, Defendant asserts, and Plaintiff does not contest, that it has no permanent "light duty" positions at all.

4. Plaintiff also proffers an accommodation regarding Plaintiff's working overtime, which according to Defendant is an essential function of the position of electrician. Even assuming *ar-*

*guendo* Plaintiff's accommodation is reasonable, it does not address any of the other essential functions Plaintiff is incapable of performing.

5. Plaintiff also argues that (1) Defendant denied Plaintiff's physician's request to conduct a functional capacity evaluation to determine the exact limitations of Plaintiff's disability; (2) Defendant never presented Plaintiff's physician with a list of the essential functions of the position of electrician; and (3) that Plaintiff's physician notified Defendant that Plaintiff could perform the essential functions of the position of electrician, consistent with the physician's prescribed restrictions. None of these arguments creates a jury issue whether Plaintiff was a qualified individual with a disability.

duties. This is exactly the opposite of what Plaintiff contends here.

Numerous federal courts, including this one, have concluded that an employee who represents on a benefits application that he is permanently disabled is judicially estopped from arguing that he is qualified to perform the duties of the position involved. *See, e.g., August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581–84 (1st Cir.1992) (summary judgment granted in favor of employer on plaintiff's claim for handicap discrimination under the Massachusetts anti-discrimination statute since plaintiff had made statements to disability insurer that he was totally disabled); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 770–71 (8th Cir.1987) (holding that plaintiff could not be "otherwise qualified handicapped individual" under the Rehabilitation Act of 1973 where she had represented to disability insurance carrier that she was unable to work and received disability benefits); *Erit v. Judge, Inc.,* 961 F.Supp. 774, 778–79 (D.N.J.1997); *Morris v. Siemens,* 928 F.Supp. 486, 495 (D.N.J.1996) (plaintiff estopped from claiming that termination was in violation of NJLAD where "summary judgment record [was] replete with certifications of [p]laintiff that she was unable to work and incapable of performing the duties of her job at the time she was discharged."); *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 945 (N.D.Ga.1995), *aff'd,* 87 F.3d 1331 (11th Cir.1996); *Harden v. Delta Air Lines,* 900 F.Supp. 493, 496–97 (S.D.Ga. 1995); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 554–56 (D.Kan.1995); *Reigel v. Kaiser Found. Health Plan,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994). *But see Smith v. Dovenmuehle Mortgage. Inc.,* 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994) (holding that although plaintiff's representation of his disability in order to receive benefits may not estop him from asserting a handicap discrimination claim, such representations will be evidence used to determine whether plaintiff was, in fact, able to perform his job).

Thus, Defendant is entitled to summary judgment on the issue whether Plaintiff is a qualified individual with a disability and, necessarily, Plaintiff's claim under the ADA.

### 3. *Plaintiff Has Not Shown that Defendant Unlawfully Discriminated Against Him Based on His Disability*

Plaintiff's contention that Defendant treated him adversely because of his disability is based primarily on his assertion that he can perform the essential functions of his position without any accommodation. However, Plaintiff's reliance on this assertion is misplaced. For reasons discussed earlier, the Court already has found that Plaintiff fails to present sufficient evidence that he can perform the essential functions of his position without accommodation.

■ This brings the Court to Plaintiff's final argument concerning the parties' factual dispute over when Defendant knew that Plaintiff's disability was permanent. Defendant contends that it terminated Plaintiff's "light duty" status in June 1995 because that is when Defendant discovered Plaintiff's injuries were permanent. Plaintiff, on the other hand, argues that Defendant knew that Plaintiff's injuries were permanent since at least May 1994. Thus, Plaintiff argues that the reason Defendant terminated Plaintiff in June 1995 was not because Defendant had just discovered that Plaintiff's disability was permanent, but rather some other reason, i.e., discrimination.

Even assuming *arguendo* Defendant knew in May 1994 that Plaintiff's disability was permanent, Plaintiff's claim still fails as a matter of law. Indeed, Defendant admits that it terminated Plaintiff based on his disability—specifically, because Plaintiff's disability prevented Plaintiff from performing many of the essential functions of the position of electrician. For this reason and reasons discussed earlier, Plaintiff has not shown that he is a qualified individual with a disability. Because Plaintiff fails to make this showing, Plaintiff cannot show that Defendant's terminating him based on his disability violates the ADA.

For this and the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's claim under the ADA.

### D. *Plaintiff Withdraws His Claims Under State Law*

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff withdrew his claims (a) for disability discrimination under Georgia state law, (b) for intentional infliction of emotional distress, and (c) that Defendant acted in bad faith. Accordingly, the Court **DISMISSES** these claims.

### E. *Plaintiff's Motion To Strike*

Plaintiff moves to strike Defendant's references to a collective bargaining agreement that Defendant submitted as an exhibit to Defendant's Reply Brief. In ruling on Defendant's Motion for Summary Judgment, the Court did not consider Defendant's references to the collective bargaining agreement. Because the Court's has granted already Defendant's Motion for Summary Judgment without considering this evidence, the Court **DENIES** Plaintiff's Motion to Strike as **MOOT**.

## IV. *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [10–1] on all of Plaintiff's claims. The Court **DENIES** Plaintiff's Motion to Strike [15–1] as **MOOT**.

The Court directs the Clerk to enter final judgment in favor of Defendant on Plaintiff's claim under the ADA. The Court directs the Clerk to **DISMISS** all of Plaintiff's claims under state law.