**Donna PICKERING, Plaintiff,**

v.

**CITY OF ATLANTA, et al., Defendants.**

**No. CIV.A.1:98CV2690–MHS.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 4, 1999.

William J. McKenney, McKenney & Froelich, Atlanta, GA, for Donna Pickering, plaintiff.

Mary Janet Huber, Namita Sundaresan Brown, Office of Atlanta City Attorney, Atlanta, GA, for City of Atlanta, Thomas Pocock, Chief of Corrections, defendants.

## ORDER

SHOOB, Senior District Judge.

This employment discrimination and breach of contract action is before the Court on defendant's motion for summary judgment. For the following reasons, the Court grants the motion.

### Background

On April 24, 1997, defendants City of Atlanta and Thomas Pocock, Chief of the City's Department of Corrections,[1] terminated plaintiff Donna Pickering from her position as a corrections officer after the City physician concluded that she was unfit for regular duty. Plaintiff had been employed by the Department of Corrections for fifteen years. During the last two and one-half years of her employment, plaintiff was assigned to "light duty" because she was taking the drug Coumadin, which put her at risk of acute blood loss if she suffered physical trauma.

In this action, plaintiff alleges that she was terminated on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and that defendant breached her employment contract by refusing to arbitrate her claim in accordance with City Ordinance 114–380. Defendant contends that it did not discriminate against plaintiff on the basis of disability, but that it terminated plaintiff because she could not perform the essential functions of her job. Further, defendant claims that the ordinance did not require it to arbitrate plaintiff's claim.

Plaintiff was employed by the Department of Corrections from 1983 until 1997.

The events giving rise to this case occurred in mid–1994. At that time, plaintiff had been working as a corrections officer at the Grady Hospital detention unit for several years. Corrections officers at Grady had daily contact with inmates, including intoxicated detainees, who could not be admitted directly to the Corrections Center. Plaintiff's duties included admitting inmates and police officers to the detention unit, patrolling the unit, making head counts of inmates, handcuffing and guarding inmates, and administering breath tests. Plaintiff concedes that corrections officers have been injured by inmates in the past, and in fact, a Grady detainee once kicked plaintiff in the eye and injured her during a struggle.

In September 1994, plaintiff suffered a blood clot in her leg and was prescribed the anti-coagulant drug Coumadin. One adverse side effect of Coumadin is an increased risk of hemorrhage if the patient suffers traumatic injury. As a result of her condition, plaintiff missed several weeks of work, and defendant requested a note from her doctor. When plaintiff returned to work, she gave her supervisor a note from her family physician instructing that she "may not engage in any activity in which she may sustain injury—this could result in acute blood loss and death."

Plaintiff's supervisor immediately assigned plaintiff to "light duty" which limited her to performing Intoxilizer breath tests, watching video monitors, and answering the telephone. In February 1995, Chief Pocock asked plaintiff to report for a "fitness for duty" evaluation, and the City physician determined that plaintiff was temporarily unfit for duty until her condition was fully treated. In May 1995, plaintiff underwent a second fitness evaluation, and the same physician concluded that plaintiff remained medically unfit for her

---

**1.** All parties have agreed that Chief Pocock is not an appropriate defendant in this action because he was acting in his official capacity as an agent of the City. Accordingly, the Court will dismiss Pocock from this action, leaving the City as the only defendant.

regular duty and was unable to work in a position which required or possibly involved physical trauma.

In the meantime, the City transferred most of its Intoxilizer operators, including plaintiff, from Grady to the new Detention Center. The City continued to limit plaintiff's duties to performing breath tests, preparing paperwork, answering telephones, and performing other physically restricted tasks. In January 1997, Chief Pocock requested that plaintiff undergo another fitness evaluation to determine how much longer she would be confined to light duty. A different City physician conducted this evaluation and concluded that plaintiff was fit "for regular duty," but "as before, no hazardous duty." Apparently, the doctor misunderstood plaintiff's job description and work history because he qualified his report by stating, "she apparently has a job that is predominantly sitting work, and there is very, very minimal risk of physical altercation."

One month later, the Deputy Chief informed the examining physician that plaintiff's original job as a corrections officer included inmate supervisory duties which involved a risk of physical confrontation. Thus, in April 1997, the doctor revised his determination and explained that, "in reviewing the information available and examining the patient, I feel that due to her long standing medical condition, she is unable to function in her capacity as a corrections officer." Chief Pocock then signed a directive relieving plaintiff from duty.

Plaintiff subsequently notified defendant that City Ordinance § 114–380 entitled her to arbitrate the disability dispute before being relieved of her duties. In her letter, plaintiff requested reinstatement and attached a medical opinion from her family physician that stated "Ms. Pickering is medically capable of performing duties as a corrections officer." The City refused to reinstate plaintiff. Plaintiff exhausted her annual and sick leave and collected unemployment until she began work as a 911 police dispatcher in December 1997.

*Summary Judgment Standard*

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party will prevail on a motion for summary judgment if it shows that "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the burden shifts to the non-moving party, who must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court, however, must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *White v. Mercury Marine*, 129 F.3d 1428, 1430 (11th Cir.1997).

*Discussion*

A. *ADA Claim*

Defendant moves for summary judgment on plaintiff's claim of disability discrimination. Plaintiff alleges that defendant terminated her based on her use of Coumadin. Defendant argues that, because of her increased risk of acute blood loss from physical trauma, plaintiff cannot perform the essential functions of the job for which she was hired, and that plaintiff has failed to prove a reasonable accommodation exists that would allow her to perform these essential functions.

To establish a prima facie case of disability discrimination, plaintiff must demonstrate that (1) she is disabled; (2) she is a qualified individual; and (3) she was discriminated against as a result of

her disability. 42 U.S.C. § 12132; *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998).[2] Defendant concedes that plaintiff is disabled, and that it terminated plaintiff because of her disability. Therefore, plaintiff can make out a prima facie case if she can show that she is a "qualified individual" within the meaning of the ADA.

Under 42 U.S.C. § 12111(8), a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." Plaintiff argues that inmate supervision, including the inherent risk of physical trauma, is not an essential part of the job of corrections officer because the job description does not indicate such, because the risk is minimal, and because there are other positions within the department that do not involve such a risk. The Court concludes that none of these arguments has merit.

When determining what functions of a job are essential, "consideration shall be given to the employer's judgment ... and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir.1997). Here, defendant's job description indicates that a corrections officer's duties include guarding, escorting, and restraining inmates. The Court concludes that inmate supervision is an essential function of the job of a corrections officer; in fact, it is the overall reason for the job. *See Vincent v. Wells Fargo Guard Services, Inc.*, 3 F.Supp.2d 1405, 1418 (S.D.Fla.1998) ("A job function may be considered essential because the very reason the position exists

is to perform that function"). The other listed duties that plaintiff claims are essential, such as answering telephones and watching video monitors, are merely peripheral tasks that an officer may be called upon to perform while he is on patrol.

Further, even if the risk that a corrections officer will be exposed to physical trauma is minimal, it may still be an essential part of the job. In *Holbrook v. City of Alpharetta*, the Eleventh Circuit held that driving to crime scenes and collecting crime scene evidence were essential functions of a visually impaired police detective's job even though the types of investigations that required him to perform these duties had occurred infrequently in the past. 112 F.3d at 1531. There, the court reasoned that the plaintiff could not predict what types of crimes he may need to investigate in the future, and, even if a relatively small amount of his time was spent performing these functions, they were still essential to the job. *Id.* at 1527–28. Likewise, even if physical altercations between prisoners and corrections officers are rare, it is essential to the job that plaintiff be able to assume the risk that such may occur.

 Finally, plaintiff argues that duties involving prisoners are not essential to the corrections officer job because there are other positions within the Department of Corrections that do not involve inmate interaction. However, plaintiff only points to the temporary "light duty" for disabled employees and the work performed by corrections employees in executive or managerial positions, which involves less inmate interaction. Reassignment to another position is required only if there is a vacant position available for which the employee is qualified. *Willis v. Conopco*, 108 F.3d 282, 285 (11th Cir.1997); 42 U.S.C.

---

**2.** Although plaintiff asserts her claim under Title II of the ADA, which governs discrimination by public entities, Title I provides the applicable law with respect to employment

discrimination actions. 28 C.F.R. § 35.140(b)(1); *Bledsoe v. Palm Beach County Soil and Water Conservation Dist.*, 133 F.3d 816, 822–23 (11th Cir.1998).

§ 12111(9)(B). Plaintiff has not shown that there was a permanent "light duty" position or an executive or managerial position that was available and for which she was qualified.

Plaintiff's argument that there are corrections officer positions involving less prisoner interaction corresponds to her claim that defendant failed to reasonably accommodate her disability. The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A); *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996). Plaintiff has the burden of proving that a reasonable accommodation exists. *Willis v. Conopco*, 108 F.3d at 285. An accommodation is reasonable only if it enables the employee to perform the essential functions of her job. *Id.* at 284; 29 C.F.R. § 1630.2(*o*)(ii).

Plaintiff claims that defendant should continue to accommodate her by assigning her to restricted duty as it did for over two years. However, the fact that defendant accommodated plaintiff for over two years by assigning her to "light duty" does not mean that such accommodation was reasonable and therefore required by the ADA. In *Allen v. Georgia Power Co.*, 980 F.Supp. 470, 478–79 (N.D.Ga.1997), the court held that it was unreasonable to require an employer to keep a disabled employee on light duty after two and one-half years. There, the court reasoned that light duty positions usually involve a totally different job from that which an employee performed before the injury, and that the ADA does not require an employer to create such a position by job restructuring. *Id.* at 478–79 n. 3. Because there was no reasonable accommodation that would allow the employee to perform the essential functions of his job, the employer did not violate the ADA by terminating him. *Id.*

Plaintiff has failed to show that a reasonable accommodation exists which would allow her to perform the essential functions of her job. The undisputed facts establish that inmate supervision, and the concomitant risk of physical trauma, was an essential function of plaintiff's job as a corrections officer. It is apparent from the job description and from plaintiff's work history that the other non-physical duties of the job were merely peripheral tasks that accompanied the overall reason for the job—prisoner supervision.

For over two years, defendant accommodated plaintiff by assigning her "light duty" because it was under the impression that plaintiff's use of Coumadin was temporary. In effect, defendant created a new job for plaintiff that prevented her from being exposed to physical trauma. In doing so, defendant eliminated the essential corrections officer functions from plaintiff's job. This was not a "reasonable accommodation," and the ADA did not require defendant to take this action. *See Allen*, 980 F.Supp. at 478 ("Where an employer does not have a permanent 'light duty' position, it is not required to create one or convert a temporary 'light duty' position into a permanent one for purposes of accommodating an employee's disability").

There was no reasonable accommodation that would have allowed plaintiff to patrol the detention center and supervise and restrain prisoners without being exposed to a risk of physical trauma. Because plaintiff has failed to satisfy her burden of proving that there is a reasonable accommodation that would allow her to perform the essential functions of her job, she cannot show that she is a "qualified individual" with a disability, or that defendant unlawfully failed to reasonably accommodate her disability. Therefore, plaintiff has failed to make out a prima facie case of discrimination under the ADA, and summary judgment is appropriate.

## B. *Breach of Contract Claim*

█ Defendant also moves for summary judgment on plaintiff's breach of contract claim. Plaintiff alleges that defendant breached City Ordinance § 114–380 when it terminated her employment without giving her the opportunity to arbitrate the matter. Plaintiff's breach of contract claim is based on the fact that the city ordinance is the equivalent of an employment contract between the City and its employees. *Wayne Co. v. Herrin,* 210 Ga. App. 747, 755 n. 7, 437 S.E.2d 793 (1993).

City Ordinance § 114–380 allows a department head to direct an employee to be examined by the City physician and provides three forms of action that the City shall take if the examining physician discovers any disability that impairs the employee's effectiveness. Subsection (1) of the ordinance states that "[i]f there is a dispute as to either the physical or mental fitness of such person to be restored to such person's position with the city, the question of mental or physical qualification shall be submitted to arbitration." Under subsection (2), if the board of arbitration determines that the disability can be corrected, the employee shall be allowed a specified period of time, as determined by the board, to correct such disability. Finally, subsection (3) states that if the examining physician concludes that the disability cannot be corrected, the department head may reassign or terminate the employee when reassignment cannot be successfully accomplished.

Logically, subsection (3) must be applied first, because it refers to actions to be taken based solely on the opinion of the initial examining physician. Here, the examining physician concluded that plaintiff's disability could not be corrected, so long as she was taking Coumadin, and plaintiff was reassigned to temporary "light duty" for two and one-half years. When defendant learned that plaintiff would be taking Coumadin indefinitely, it determined that permanent reassignment could not be successfully accomplished and terminated her. These actions were authorized under subsection (3) of the ordinance.

Plaintiff argues that defendant was required to arbitrate the matter, in accordance with subsections (1) and (2), because she disputed her fitness to be restored to her position. In fact, however, although plaintiff contends that she is physically capable of performing all her original corrections officer functions, including inmate supervision, she does not seek to be restored to her original corrections officer position. Her only contention is that she should be restored to her former "light duty" position. In other words, notwithstanding her contentions regarding her physical capabilities, plaintiff concedes that she cannot supervise inmates because of the risk of acute blood loss if she should suffer any physical trauma.

The ordinance does not contemplate arbitration when an employee concedes that she is unable to perform her original job but contends that she should be allowed to continue in a temporary "light duty" position. The ordinance only requires the City to submit the matter to arbitration if there is a dispute as to plaintiff's physical fitness to be restored to her original position. Since plaintiff concedes that, due to the effects of her medication, she is not able to perform all the functions of her original position as a corrections officer, the City was not required to arbitrate her dispute. Accordingly, the City did not breach the ordinance, and summary judgment is appropriate.

### Summary

For the foregoing reasons, the Court DISMISSES Thomas Pocock as a party defendant; GRANTS defendant City of Atlanta's motion for summary judgment [# 11–1]; and DISMISSES this action.